# Richmond

## GREY EDMISTON v. SAMUEL KUPSENEL.

April 27, 1964.

Record No. 5718.

Present, All the Justices.

*Harvey S. Lutins* (*Honeyman & Lutins,* on brief), for the plaintiff in error.

*Ralph R. Repass* (*D. Burke Graybeal,* on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Grey Edmiston, the plaintiff, secured at the hands of a jury a verdict against Samuel Kupsenel, the defendant, in the sum of

$28,500.00 for personal injuries received in an automobile accident caused by the negligence of the defendant.

Upon motion of the defendant, the trial court ruled that the jury's verdict was excessive and put the plaintiff on terms to accept an award of $14,250.00 or face a new trial on the issue of damages. The plaintiff, pursuant to the provisions of Code, § 8-350[1], accepted, under protest, the reduced judgment for $14,250.00 and excepted to the action of the trial court in ordering the remittitur of $14,250.00. We granted the plaintiff a writ of error.

The evidence shows that the collision in which the plaintiff was injured occurred on September 29, 1959. The plaintiff was a passenger in an automobile being operated by Glenn R. Blevins. The Blevins vehicle was struck with great force by an automobile being operated by Hester S. Sheffield. The Sheffield vehicle had, in turn, been struck in the rear by the automobile of the defendant and propelled across the highway into the Blevins vehicle. The plaintiff was thrown forward with such force that his head struck and "broke a hole" in the windshield of the vehicle in which he was riding.

The plaintiff was rendered unconscious as a result of the accident but recovered sufficiently to be able to walk, with assistance, to the ambulance. He was admitted to Lee Memorial Hospital at Marion where he, "just blacked out continuously for about a couple or three days." He was suffering, in the words of his physician, Dr. Joseph S. Staley, from, "a severe lacerated and incised wound of the forehead, and the scalp . . . considerable cerebral concussion, manifested by disorientation and some dilation of both pupils . . . moderately severe contusion over the region of the right knee and over the region of the right hip . . . multiple abrasions [or] small lacerations of both legs and the face and thorax . . . a large swelling on the dorsum of the right hand."

Dr. Staley, in characterizing the plaintiff's injuries said, "he was so

---

[1] § 8-350. *Allowing appeal when verdict reduced and accepted under protest.—* In any action at law in which the trial court shall require a plaintiff to remit a part of his recovery, as ascertained by the verdict of a jury, or else submit to a new trial, such plaintiff may remit and accept judgment of the court thereon for the reduced sum under protest, but, notwithstanding such remittitur and acceptance, if under protest, the judgment of the court in requiring him to remit may be reviewed by the Supreme Court of Appeals upon a writ of error awarded the plaintiff as in other actions at law; and in any such case in which a writ of error is awarded the defendant, the judgment of the court in requiring such remittitur may be the subject of review by the Supreme Court of Appeals, regardless of the amount.

sore everywhere . . . he had such extensive injuries . . . he had had a severe head injury . . . he was so frankly bunged up."

The plaintiff was treated for his injuries and discharged from the hospital on October 4, 1959, to return to his home. He suffered increased pain in his chest and was re-admitted to the hospital on October 9. It was then found that he had two fractured ribs. These fractures were treated and he was again discharged from the hospital on October 22, 1959.

The plaintiff returned to his employment as a machinist at the Brunswick Company after a lapse of one month from the date of the accident. He continued to suffer pain and upon subsequent examinations, Dr. Staley found that his patient had, "complete loss of the abdominal and cremasteric reflexes on his left side" involving muscles, "enervated from the lower back" with, "marked tenderness . . . over the spine of the eighth to the tenth dorsal vertebra with marked muscle spasm on either side of these structures." From these symptoms, the doctor concluded that his patient had, "definite neurological damage on the left side of his lumbar spine" and that his pain and discomfort therefrom were attributable to the injuries suffered in the accident.

Dr. Staley testified that the plaintiff had a permanent scar on his forehead resulting from the, "tongue-shaped laceration extending from roughly up in the hair and down and this was turned back." When asked whether the injury to plaintiff's spine was permanent, he said, "the fact that it has persisted for . . . three and a half years, would seem—in other words, if he were going to recover, I would think he would have done it in this time."

In an examination conducted by Dr. Staley immediately before trial, the plaintiff, "did not show full recovery." The doctor said that the plaintiff still had, "marked muscle spasm of the lumbar . . . muscles . . . with pain and tenderness over the region of the seventh to tenth dorsal vertebra. Indeed, it was so marked that we thought he might have what is known as Kummell's disease, which involves the vertebral bodies, and this is why we referred him for another X-ray of his spine, because that may occur anywhere from one to five years after the original injury."

The plaintiff was also examined and treated by Dr. O. O. Smith, Jr., who testified that the plaintiff was suffering from pain in his lower back, radiating into both hip joints. Dr. Smith's X-rays revealed, "a slight narrowing of the lumbosacral interspace, consistent

with but not diagnostic of a herniated intervertebral disc." The doctor concluded that the plaintiff, "had some trouble in the lumbosacral area" attributable to a whiplash injury. Dr. Smith was not "able to say" whether the plaintiff's back injury was temporary or permanent or whether it resulted from the accident or from an old war-time injury to the plaintiff's knee.

The plaintiff, testifying in his own behalf, stated that he was fifty-one years of age; that he had been in good health, and had experienced no trouble with his back prior to the accident. He described his injuries and their effect upon him. He told the jury that he still suffered pain, "all the time, day and night"; that he could not, "do a day's work without" wearing a back brace, and that he had not, "been able to walk" his natural gait since the accident.

As a result of his injuries, the plaintiff lost $397.12 in wages and incurred medical and hospital expenses of $518.90, or a total of $916.02.

Dr. Harry W. Bachman, Jr., a witness called by the defendant, testified that he examined the plaintiff approximately two weeks before the trial. He stated that the plaintiff was suffering from degenerative arthritis; that the plaintiff had an abnormal spine, which he had had since childhood, in which, "the first one of the sacral vertebrae didn't fuse onto the sacrum, and is down here at the end of his spine trying to be one of the lumbar vertebrae, kind of gives him fits, so to speak. This has produced narrowing and arthritic changes right at this point, which is right at the end of his spine (indicating)." This doctor said that the plaintiff's war injury to his knee was not in "anywise connected with" his back injury. Dr. Bachman, however, candidly conceded that the accident had aggravated the pre-existing arthritic condition in the plaintiff's spine. He freely admitted that, "by virtue of this aggravation . . . this man is having low back pains and back trouble and is in pain, and, as a matter of fact, is wearing a brace." At another point in his testimony, Dr. Bachman acknowledged that the plaintiff was "hurting" and was "not a malingerer."

When this witness of the defendant was asked whether the aggravation of the plaintiff's pre-existing condition was permanent, he said, "it is probably . . . more or less permanent, but I think that I mean it may or—he is going to have good days and he is going to have bad days."

The sole question before us is whether the trial court erred in its ruling that the verdict of the jury was excessive, and in ordering

the plaintiff to remit half of the verdict or submit to a new trial on the issue of damages.

In Virginia, the courts are clothed with the authority, and charged with the duty, to correct what plainly appears to be an unfair verdict in a personal injury case. The use of this authority is but the exercise of the inherent discretion of the trial courts, limited by the admonitory principle that it is the jury's function, ordinarily, to assess damages. *Dinwiddie v. Hamilton*, 201 Va. 348, 352, 353, 111 S. E. 2d 275; *Rawle v. McIlhenny*, 163 Va. 735, 744, 745, 177 S. E. 214; *E. I. DuPont Co. v. Taylor*, 124 Va. 750, 762-765, 98 S. E. 866; *Farish & Co. v. Reigle*, 11 Gratt. (52 Va.) 697, 722.

Where the attack upon such a verdict is based upon its alleged excessiveness, if the amount awarded is so great as to shock the conscience of the court and to create the impression that the jury has been motivated by passion, corruption or prejudice, or has misconceived or misconstrued the facts or the law, or if the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision, the court is empowered, and in fact obligated, to step in and correct the injustice. *Lilley v. Simmons*, 200 Va. 791, 797, 108 S. E. 2d 245; *C. D. Kenny Company v. Solomon*, 158 Va. 25, 30, 31, 163 S. E. 97; *American Oil Co. v. Nicholas*, 156 Va. 1, 12-14, 157 S. E. 754; *Ches. & O. Ry. Co. v. Arrington*, 126 Va. 194, 217, 101 S.E. 415.

If the verdict is determined to be excessive, the court may put the successful party on terms to accept a reduced amount, deemed reasonable compensation for his injuries, as an alternative to awarding a new trial (Code, § 8-350), or it may order a new trial as to the whole amount of damages (Code, § 8-224[2]).

But neither course of action is warranted if the verdict merely appears to be large and more than the trial judge would have awarded had he been a member of the jury. If the verdict is supported by sufficient evidence and is reached in a fair and impartial trial, it cannot be disturbed. *Danville Com. Hospital v. Thompson*, 186 Va. 746, 763, 764, 43 S. E. 2d 882; *Simmons v. Boyd*, 199 Va. 806, 811, 812, 102

[2] § 8-224. *Power to grant new trial; how often.*—In any civil case or proceeding, the court before which a trial by jury is had, may grant a new trial, unless it be otherwise specially provided. A new trial may be granted as well where the damages awarded are too small as where they are excessive. Not more than two new trials shall be granted to the same party in the same cause on the ground that the verdict is contrary to the evidence, either by the trial court or the appellate court, or both.

S. E. 2d 292; Burks Pleading and Practice, 4th Ed. Sec. 321, pp. 582-585.

The crucial question to be determined, therefore, in the case before us, is whether there was evidence to sustain the verdict of the jury, for if there was, then the trial court was in error in ordering the remittitur.

The evidence shows that, in addition to the multiple contusions and lacerations which he suffered about his body, the plaintiff had two fractured ribs; that he sustained a severe head injury, resulting in, "considerable cerebral concussion" and a permanent scarring of his forehead; that he suffered a serious permanent injury to his spine, causing him pain, "all the time, day and night" so that, as Dr. Staley put it, "he finds it increasingly difficult to continue to carry the load of work which is assigned to him."

From this evidence, the jury was entitled to conclude that, as a result of the accident, the plaintiff sustained painful and severe injuries from which he had already suffered for more than three years; that his injuries were of a permanent nature and such as to cause him future physicial pain and mental anguish, and that the injuries had a disabling effect upon the plaintiff.

This being true, the verdict was supported by sufficient evidence. There is nothing about the size of the verdict, nor is there anything elsewhere in the record, to suggest that the jury was biased in favor of the plaintiff or prejudiced against the defendant. The amount returned is not so out of proportion to the plaintiff's injuries as to make it appear that the jury misconceived or misconstrued the facts or the law. Under these circumstances, we cannot say, and the trial court should not have ruled, that the sum awarded is so great as to be conscience-shocking. *Williams Paving Company* v. *Kreidl*, 200 Va. 196, 204, 104 S. E. 2d 758.

The defendant relies upon the case of *Smithey* v. *Refining Company*, 203 Va. 142, 122 S. E. 2d 872, to support the action of the trial court in the case now before us. In the *Smithey* case, we affirmed the action of the trial court in ordering the remittitur of $10,000.00 of a $15,000.00 jury verdict, in lieu of the award of a new trial on the issue of damages, in a personal injury case.

As was pointed out in the *Smithey* opinion, each case must be judged on its own merits, according to its own peculiar facts and circumstances. Judged on that basis, we found that Smithey's injury, "was not of a serious nature nor was it permanent or disabling in any

way." Therein lies the touchstone of distinction between that case and the one now under consideration. Here, as has been seen, the plaintiff's injury was of a serious nature, it was permanent and it was disabling. It is because of this controlling distinction that the jury's determination of what was fair compensation for this plaintiff should not have been disturbed.

Accordingly, the judgment of the trial court will be reversed, the verdict of the jury in the full amount of $28,500.00 will be reinstated and final judgment in that sum, with interest thereon from November 7, 1962, the date of the verdict, will be entered in favor of the plaintiff against the defendant.

*Reversed and final judgment.*