## Richmond

W. Regnier Miller v. Vaughan Motor Company, Incorporated.

March 6, 1967.

Record No. 6334.

Present, All the Justices.

*William Rosenberger, Jr.* for the plaintiff in error.

*E. Marshall Frost (Caskie, Frost, Davidson & Hobbs,* on brief), for the defendant in error.

Buchanan, J., delivered the opinion of the court.

The only question on this appeal is whether the trial court erred in

reducing to $6,500 a verdict for $12,500 rendered by a jury in favor of the plaintiff in a personal injury action.

On May 31, 1963, about 10:30 a.m., the plaintiff, W. Regnier Miller, was entering the warehouse of the defendant, Vaughan Motor Company, Incorporated, in Lynchburg, to make a purchase. As he ascended the steps to enter the door, he was struck on the back or side of his head by the end of a ladder which extended beyond the end of defendant's truck as it was being backed across the sidewalk toward the door the plaintiff was entering.

The blow knocked plaintiff to the street and almost knocked him out, he said, but he got up, brushed himself off and walked on into the building. Not finding the item he came for, plaintiff returned to his car across the street and sat there for some fifteen minutes, "[t]rying to get my faculties back." The driver of the truck and his companion thought the ladder had hit the warehouse.

Later the plaintiff instituted this action to recover damages for his injuries, and it was heard by a jury on February 26, 1965. After all the evidence was introduced the court sustained the plaintiff's motion to strike defendant's evidence on the ground that as a matter of law the plaintiff was entitled to recover. The case was then submitted to the jury on the question of damages only, and the jury returned a verdict for the plaintiff in the sum of $12,500. Defendant moved to set aside the verdict on the ground, among others, that it was excessive. The court responded that it was certainly higher than the court would have given if on the jury, "but I don't know that it is excessive. I will think about the motion." Afterwards the court concluded that the verdict was excessive and on June 14, 1965, entered its order requiring the plaintiff to remit $6,000 of the verdict or submit to a new trial on the issue of damages. The plaintiff accepted the reduced sum of $6,500 under protest and we awarded a writ of error to the judgment requiring the remittitur. Code § 8-350, 1957 Repl. Vol.

The issue is whether there was evidence sufficient to sustain the verdict of the jury. If the verdict is supported by sufficient evidence, and was reached in a fair and impartial trial, it should not be set aside merely on the ground that it appears to be large and more than the trial judge would have awarded if he had been a member of the jury. *Edmiston* v. *Kupsenel*, 205 Va. 198, 202, 135 S.E.2d 777, 780.

The evidence as to the effect of the injury suffered by the plaintiff was in substance as follows:

Plaintiff was an assistant manager of a funeral home in Lynchburg

and was fifty-six years old at the time of the trial. After being struck by the ladder he went back to his office and called Dr. Mundy and got an appointment for Monday, June 3. Dr. Mundy had treated plaintiff in 1960 for trouble in his neck, following which he had five or six treatments from a chiropractor. After that time he had had no trouble at all with his neck.

Plaintiff went to see Dr. Mundy on June 3 and thereafter received the treatments described below by Dr. Mundy.

Plaintiff testified that for the first month after the accident he worked only part time but was paid his salary, and that since then he has been doing only about fifty percent of his usual duties; that he makes home calls now only in emergency cases because the lifting that is required in his work aggravates his condition. Since the accident he has had to hire labor for work about the house which he previously did himself. He could sleep, he said, only two or three hours after he went to bed and then only short naps until daylight. He testified that he had experienced pain every day and every night since he was injured.

Dr. Mundy testified that when he examined plaintiff on June 3 there was definite soreness and tenderness in the muscles down the right side of his neck. X-rays showed no injury to the bone but a moderately severe osteoarthritis in the vertebrae. He prescribed sedation to relieve the pain.

Plaintiff returned to Dr. Mundy's office on June 7, unimproved, and was then started on cortisone and on traction to stretch his neck, and this treatment was carried on twice a week and later once a week until July 26, and plaintiff was then told to come back if he experienced further trouble. Plaintiff returned in October 1963 because of pain down his arm and numbness which interfered with his rest.

Dr. Mundy started the same program of treatment as before and continued it through January 3, 1964. On December 12, 1963, in that period, plaintiff had an acute flare-up involving pain down his arms.

Dr. Mundy testified that he could not say "with definite certainty" that this pain and the flare-ups were the result of the accident. "I can't say definitely one way or the other about it", but it would be his opinion, he said, "that after four months the damage due to the injury was all gone; it was over."

Thereafter, on March 25, 1964, plaintiff consulted Dr. John G. Novak, a neuropsychiatrist, a member of the Academy of Neurology and Psychiatry since 1944, and whose qualifications defendant's

counsel conceded. Dr. Novak said plaintiff came to him for evaluation and treatment of the aches and pains in his neck and shoulders. After taking a detailed history from plaintiff, examining him and studying x-rays, Dr. Novak prescribed medication and a course of treatment at the Lynchburg General Hospital. At the time of the trial, February 26, 1965, plaintiff had received eighty-three therapy treatments at the hospital and they were still to be continued. Plaintiff received a treatment the day before the trial.

Dr. Novak testified that the last time he examined plaintiff was on February 18, 1965, a week before the trial. He said plaintiff's history showed intervals of improvement followed by return of his trouble and aggravation of his discomfort, and that this lack of continued improvement affected plaintiff's mood; that plaintiff had osteoarthritis, a degenerative but not uncommon condition of the bones; that trauma is definitely a factor aggravating this condition. He was familiar with plaintiff's history of having some previous trouble with his neck and of his being relieved by the treatments then received and thereafter continuing free of any trouble until this accident of May 31, 1963; that beginning with that accident plaintiff had had a practically constant history of pain and discomfort that had necessitated fairly continuous treatment, and that he believed this was caused by the accident, and that his present state was very definitely related to that injury. He told plaintiff that if he was able to get along in reasonable comfort on one treatment a week or every two weeks, that would be excellent; but he felt, he said, that plaintiff would need treatment over an indefinite period. "I felt the natural probability would be that he would have to have treatment the rest of his life but how much or how little would depend on what he did, because this seemed to be a very definite aggravating factor."

At the time of the trial plaintiff had incurred expenses for treatments by Dr. Mundy, Dr. Novak and Lynchburg General Hospital totaling $580.

Dr. Botton, witness for the defendant, testified that he examined the plaintiff on January 27, 1965, and it was his impression that the plaintiff probably suffered arthritis in his neck which may have been aggravated by the injury of May 31, 1963, but that he had probably gotten over it physically. "It was probably an aggravating factor to the pre-existing arthritis. I think he cleared this condition." In the recent case of *Wagnstrom* v. *Pope*, 207 Va. 761, 152 S.E.2d 21, decided January 16, 1967, we said that the rules applicable to setting aside a jury verdict on the ground that it was excessive are

well settled and were recently stated in *Edmiston* v. *Kupsenel, supra,* and restated in *Hardy* v. *Greene,* 207 Va. 81, 84, 147 S.E.2d 719, 721, and *Davenport* v. *Aldrich,* 207 Va. 271, 273, 148 S.E.2d 768, 770, and could be summarized as follows:

"Where the jury verdict in a personal injury case appears to be the result of passion, prejudice or corruption, or misconception of facts or law, or where the disproportion between the plaintiff's injuries and the award is so great as to suggest that the decision was not fair and impartial, it is the duty of the trial court to set aside the verdict and grant a new trial as to damages or to put the successful party on terms to accept a reduced amount. But where the jury's verdict is supported by sufficient evidence and reached by a fair and impartial jury, it cannot be disturbed merely because the trial judge would have awarded damages in a lesser amount if he had been a member of the jury."

We do not find in the evidence here anything to indicate that the verdict resulted from any passion, prejudice or corruption, or any misconception of the facts or the law. The character of the injury inflicted on the plaintiff was clearly stated. There was evidence for the plaintiff which the jury could accept that at the time of the injury the plaintiff no longer suffered from his 1960 trouble. There was no conflict in the medical testimony that the injury received by the plaintiff had aggravated any arthritic condition then existing. There was some conflict in the evidence on whether the plaintiff had recovered from his injury at the time of the trial. The evidence that he had was not of a positive nature. The testimony that he had not was positive.

The jury had the right to conclude from the evidence that plaintiff's condition resulted in whole or in part from his injury, that the effect of the injury remained and that because of it plaintiff would continue to suffer pain, to require treatment and to incur expense. These were conditions that Dr. Novak thought plaintiff would have to learn to live with in some degree for the rest of his life. These were the questions for decision. They were factual in their nature and were properly submitted to the jury for its determination in the exercise of its composite judgment on the evidence before it.

"An impartial jury properly instructed is the best tribunal to pass upon the amount of damages to be awarded in cases involving personal injury. * *" *National Fruit Product Co.* v. *Wagner,* 185 Va. 38, 40, 37 S.E.2d 757, 758.

There is no showing that the jury in this case was not impartial or that it labored under any misconception of the facts or the law. It was said in *Edmiston* v. *Kupsenel, supra,* in distinguishing it from *Smithey* v. *Refining Company,* 203 Va. 142, 122 S.E.2d 872, by the same author, that each case must be judged on its own merits and according to its own facts and circumstances. We conclude that under the evidence it was for the jury to decide what was just compensation to the plaintiff for the injuries he had received.

The judgment appealed from is reversed, the verdict of the jury for $12,500 is reinstated, and final judgment in that amount will be entered here for the plaintiff.

*Reversed and final judgment.*