## Richmond

## ROGER W. SAMPSON, COMMITTEE, ETC.

v.

## WILLIAM T. SAMPSON, II, ET AL.

March 6, 1981.

Record No. 790328.

Present: Carrico, C.J., Harrison, Cochran, Poff, Compton, and Thompson, JJ.*

* Mr. Chief Justice I'Anson presided at the oral argument of this case but retired January 31, 1981.

*William E. Artz* (*Schwartz, Ellis and Artz, Ltd.*, on brief), for appellant.
*Denman T. Rucker* for appellees.

COCHRAN, J., delivered the opinion of the Court.

In this family dispute, Roger W. Sampson, Committee for his step-mother, Marjorie L. Sampson, an incompetent person, filed a motion for judgment in the court below against his brother and sister-in-law, William T. Sampson, II, and Jo Ann Sampson, defendants, alleging that defendants on January 22, 1977, had unlawfully entered Marjorie Sampson's summer cottage in Maine and removed some of her personal property. The Committee sought to recover the value of the property taken, with interest, costs, and attorney's fees. Defendants filed an answer admitting that they had entered the residence without permission in January, 1977, to remove fishing equipment and a coffee maker which belonged to them, but which they did not find on the premises, and two coats belonging to Harriett Adams, a sister of Marjorie Sampson's. They admitted removing the coats, a portrait of William Sampson's grandfather, and items of silverplate belonging to Marjorie Sampson which she had previously offered to give them. They stated that they had offered and were still willing to return the silverplate to her.

In a jury trial, the Committee testified that, based upon his personal recollection and that of his wife, and upon information furnished by others who did not testify but were familiar with the summer residence and its contents, he had prepared a list of missing property and submitted it to Douglas Henry, a professional appraiser. Henry testified that the total value of the items on the list was $6,860. When the jury returned a verdict for the Committee in the amount of $6,860, defendants filed a motion to set aside the verdict and grant a new trial. The trial court, ruling that there was insufficient credible evidence to support the verdict, set it aside and awarded judgment in favor of defendants by final order entered December 5, 1978. On appeal, the Committee challenges this action of the trial court.

Charles Wheeler, deputy chief of the local volunteer police force, testified by deposition that on January 22, 1977, he investigated a report of activity at the Sampson cottage. He found that the driveway had been plowed, that there were footprints in the snow, and that a windowpane in the residence had been cut with a glass cutter. The next day he met defendants leaving the cottage in their "Blazer", in which he observed several cane-bottom chairs "tipped up on their

backs" high enough so that he knew there was "material also under them". He had seen the chairs in the residence when servicing the building for the oil company for which he worked. William Sampson identified himself to Wheeler and explained that he and his wife had forgotten his keys, so they broke a window and entered the cottage to get some things they had left the preceding summer. Upon leaving, when asked if the window had been secured, William Sampson told Wheeler it was "all taken care of". Later that evening, upon inspection, Wheeler found the window was not secure.

Harold Dow, who had served for many years as caretaker of the cottage, testified by deposition that when he returned from a trip to Florida in January, 1977, he inspected the residence and discovered that a window was broken and various items of personal property were missing. He described a mahogany drop-leaf table with two leaves, shown in a color photograph (Plaintiff's Exhibit 2), four or six cane-bottom chairs (four being shown in the photograph), a brass candle-stand, a brass candleholder, two mirrors, a kerosene lamp, four plates of greenish-gray design, two sets of dishes, eight clear-cut crystal goblets, a bowl-and-pitcher set, and a cast-iron toy locomotive.

No transcript was made of the evidence and incidents of trial. A written statement summarizing the testimony of witnesses who testified at trial, signed by opposing counsel and by the trial judge, was made a part of the record pursuant to the provisions of Rule 5:9(c).

Roger Sampson testified that he had been appointed Committee for his stepmother on November 12, 1976, after a contested hearing in which defendants opposed his appointment. He and his wife, Mary, visited his stepmother at the Maine cottage around Labor Day in 1976. On the day prior to their return to their home in Virginia, they cleaned and counted a 70-piece set of sterling silverware which, with a 68-piece set of silverplate, was later wrapped and placed in a tin container by Dow, the caretaker. The furniture and other articles of personal property were left in the residence during the winter. One key was left inside the dwelling, the other was given to Dow.

The witness further testified that in January, 1977, Dow telephoned him that the cottage had been burglarized, and he directed the caretaker to make a list of missing items. When he and his wife visited the cottage in August, 1977, he compiled the final list of missing property from their own personal observation and from a partial list made by Dow, Sylvia Young, the local postmistress who was familiar with the premises, and Hazel Springer and Daisy Hudson, who had performed housework there. He submitted the list to Henry for appraisal. Henry's copy of the list, showing his appraised values of the missing items,

was introduced into evidence, over defendants' hearsay objection, as Plaintiff's Exhibit 5. The witness testified that after his qualification as Committee for his stepmother he did not give defendants permission to enter the Maine cottage.

Mary Sampson testified that in August, 1977, she found in a cloth napkin in the silverware drawer of the Maine cottage a sterling silver teaspoon that was a part of the missing set of silverware. This teaspoon was introduced into evidence as Plaintiff's Exhibit 4.

Henry verified his appraisal. He testified that determining the fair market value of personal property from a verbal description was an acceptable appraisal method. He made his appraisal from an oral description of each listed item, photographs of some items, examination of the sterling silver teaspoon that was part of the 70-piece set, and examination of comparable porcelain objects brought to him from Marjorie Sampson's residence in Arlington County.

The defendants, William and Jo Ann Sampson, testified that they drove to New England in January, 1977, to investigate the possibility of a job transfer for William, to consider their possible retirement in that area, and to retrieve some personal belongings from the summer residence. They broke a window with a penknife and entered the dwelling on January 22, 1977, to look for their fishing equipment and coffee maker, and two coats belonging to Harriett Adams. They found and removed the coats but did not find the fishing equipment or coffee maker. They also took a trunk, a 68-piece set of silverplate found in a 3-gallon tin, and a portrait of Admiral Sampson, William's grandfather. The next day, they returned and reentered the cottage, but removed nothing from the interior. They took only a wooden sign with the name "Sampson" on it, made by William and posted outside the dwelling. As they were leaving, Officer Wheeler drove up to investigate; William identified himself and his wife as members of the Sampson family that owned the cottage.

We need not review other evidence adduced by the defendants for the purpose of corroborating their testimony, because the jury, by its verdict, resolved all conflicts in the evidence in favor of the plaintiff. The dispositive question is whether the admissible plaintiff's evidence was sufficient to support the verdict.

As stated in the trial judge's opinion letter of November 24, 1978, and in the final order entered on December 5, 1978, the decision to set aside the verdict and enter final judgment for the defendants was based on insufficiency of credible evidence for the plaintiff. The opinion and the order noted that the "list of missing items was reconstructed largely from hearsay testimony", *i.e.,* the recollection of persons not

called to testify, who gave their information to the Committee, who then prepared the "master list". Accordingly, although the defendants had only moved that the verdict be set aside and a new trial awarded, the trial court, granting relief in excess of what was sought, set aside the verdict and entered final judgment in favor of the defendants.

It is apparent that the evidence as to some of the missing items appraised on Plaintiff's Exhibit 5 was admissible. The most valuable item was the 70-piece set of sterling silverware, appraised by Henry at $2,800. He based his appraisal upon his examination of a teaspoon (Plaintiff's Exhibit 4) that was a part of the set. Mary Sampson testified that she found this single piece in the Maine cottage; Roger Sampson testified that he delivered it to Henry to use in making the appraisal. Roger testified that he and his wife cleaned and counted the 70-piece set at the end of the summer in 1976. The appraisal of this set, therefore, was not based upon the hearsay statements of persons who did not testify, but upon the positive identification made by witnesses. The same may be said, albeit with less confidence, of the drop-leaf table appraised at $750, the four cane-bottom chairs, appraised at $300, the candelabra appraised at $150, and the brass kettle with cover, sugar bowl and creamer appraised at $110. The caretaker described these pieces and identified them in a color photograph (Plaintiff's Exhibit 2) that Henry used in making his appraisal. But Henry also relied upon verbal descriptions that may have been furnished by persons who did not testify.

It is also apparent that evidence as to numerous other items shown on Plaintiff's Exhibit 5 was inadmissible. The age, condition, and origin of many items listed on Exhibit 5 were not based upon the testimony of any witness familiar with the contents of the Sampson cottage. Dow did not testify in such detail, nor did Roger Sampson or his wife. We can only conclude that the relevant information came from neighbors in Maine who did not testify.

Under these circumstances, however, the trial court erred in setting aside the jury verdict and entering final judgment for defendants. Under Code § 8.01-430, a verdict may be set aside only where it is contrary to the evidence or without evidence to support it and the trial court may then enter final judgment rather than grant a new trial if there is sufficient evidence to enable the court to decide the case upon its merits. *Tyree* v. *Lariew*, 208 Va. 382, 384, 158 S.E.2d 140, 142 (1967). *See Commonwealth* v. *McNeely*, 204 Va. 218, 222, 129 S.E.2d 687, 689-690 (1963), and cases there cited. It is reversible error for the trial court to set aside a verdict where the inferences neces-

sarily underlying the verdict are reasonably deducible from the evidence. *Lane* v. *Scott,* 220 Va. 578, 582, 260 S.E.2d 238, 240 (1979).

In the present case, there was sufficient evidence to support the verdict in part. The verdict established the liability of defendants, and we cannot say that this was contrary to the evidence or without evidence to support it. Although most of the evidence as to the unlawful taking was circumstantial, the jury could reasonably infer that defendants had removed more than they admitted taking from the cottage. The evidence supporting such an inference was not dependent upon the list, compiled by Roger Sampson in order to assist the appraiser, which was the subject of the hearsay challenge. Conflicts in the evidence affecting the credibility of William and Jo Ann Sampson presented jury issues that the jury resolved against them.

Several alternatives are available to a trial court where an improper verdict has been returned by a jury. Where the issue of liability is not clearly decided by the verdict, or is not separable from the issue of damages, the verdict should be set aside and a new trial granted as to all issues. *Rome* v. *Kelly Springfield,* 217 Va. 943, 948-49, 234 S.E.2d 277, 281 (1977); *Isenhour* v. *McGranighan,* 178 Va. 365, 372-74, 17 S.E.2d 383, 386 (1941). *See Rawle* v. *McIlhenny,* 163 Va. 735, 749, 177 S.E. 214, 220-21 (1934). Where the finding of liability is clearly decided by the verdict and is supported by the evidence, the trial court may set aside the verdict and grant a new trial limited to the issue of damages. *Appliance Company* v. *Harrington,* 201 Va. 109, 116, 109 S.E.2d 126, 131-32 (1959). *See also E. R. Walker* v. *M. O. Crosen,* 168 Va. 410, 416-17, 191 S.E. 753, 755-56 (1937); *Rawle, supra,* 163 Va. at 748, 177 S.E. at 220. Moreover, if the trial court concludes that a verdict is excessive, it has the authority under Code § 8.01-383.1 to require the plaintiff to remit a portion of the award or submit to a new trial. *See Edmiston* v. *Kupsenel,* 205 Va. 198, 202, 135 S.E.2d 777, 780 (1964). In awarding a new trial, it is within the trial judge's discretion to decide whether a new trial should be on all issues or solely on the issue of damages. *Rutherford* v. *Zearfoss,* 221 Va. 685, 689-90, 272 S.E.2d 225, 228 (1980).

In the present case, where some part of the damage award was based upon inadmissible hearsay evidence, it was proper for the trial court to set aside the verdict. Nevertheless, as the verdict as to liability and a portion of the damages was supported by credible admissible evidence, the court erred in entering final judgment for defendants notwithstanding the verdict.

Under Code § 8.01-681, we are authorized, when we reverse an erroneous judgment to enter final judgment upon the merits if

the facts before us are such as to enable us to attain the ends of justice. Here, we cannot be satisfied that we have sufficient facts to enable us to determine the proper amount of damages. Moreover, we adhere to the view that it is generally preferable to have a jury make such a determination rather than for us to do so. *See Golf Club* v. *Briggs, Inc.,* 198 Va. 586, 593-94, 95 S.E.2d 233, 238 (1956). Accordingly, we will reverse the judgment of the trial court and remand the case for a new trial limited to the question of damages.

*Reversed and remanded.*