**CIRCUIT COURT OF THE CITY OF NORFOLK**

Cecil L. Hatfield

v.

Norfolk & Western Ry. Co.

September 13, 1995

Case No. L93-3385

BY JUDGE MARC JACOBSON

On June 20, 1995, Norfolk & Western Railway Company ("Defendant") filed Post Trial Motions requesting this court to set aside the jury verdict, entered in the above referenced case, and enter summary judgment on behalf of the defendant or grant a new trial on the issue of damages or liability, or both, or in the alternative to grant an order of remittitur, based on what defendant considered an excessive jury verdict. Defendant argued that the jury award of $700,000.00 was excessive given the nature and extent of plaintiff's injury, as well as the fact that plaintiff's counsel only requested $450,000.00 in damages in his closing argument. Cecil L. Hatfield ("Plaintiff") filed a Brief in Opposition to Defendant's Post Trial Motions arguing that there was overwhelming evidence to support both the jury's findings regarding liability and the jury's award of damages. On July 11, 1995, defendant filed a Response to Plaintiff's Brief in Opposition, arguing further that the jury's verdict was excessive as a matter of law. This court heard arguments on the issues raised by Defendant's Post Trial Motions on August 23, 1995.

This action arises out of events that occurred on March 26, 1991, when Cecil L. Hatfield, a carman at Norfolk & Western Railway Company's 38th Street Shop, injured himself while lifting a door pan that had been burned off under a hopper car. Plaintiff had the 72 pound door pan about three-quarters

of the way up into the vertical position when he experienced pain in his lower back which "took his breath away."

As a result of the incident, plaintiff sought medical assistance at the Norfolk Diagnostic Clinic. At the Clinic, plaintiff was seen by Dr. Mistry, who diagnosed his injury as a back strain and prescribed medication and bed rest. After a second visit, Dr. Mistry referred plaintiff to his family doctor, Dr. Peter Jacobson. Dr. Jacobson, a orthopedic surgeon at Virginia Beach Orthopedic Associates, diagnosed a sciatic nerve condition and a possible bulging disk and prescribed physical therapy. Plaintiff continued physical therapy until May 1, 1991, when Dr. Jacobson released him to return to his duties as a carman. From May 6, 1991, until October 1991, plaintiff worked the same job he had prior to the incident.

In October 1991, plaintiff went to Dr. Charron, an orthopedic surgeon practicing with Atlantic Orthopedic Associates in Virginia Beach. Dr. Charron, concerned about plaintiff's continued pain, ordered a Magnetic Resonance Imaging ("MRI"). The MRI, administered on November 6, 1991, revealed a degenerative condition and a small herniated disk at the L5-S1 level. Plaintiff underwent additional physical therapy and on January 6, 1992, Dr. Charron released him to return to full duty. Although he suffers from what Dr. Wardell and Dr. Charron classify as a 5% to 7% partial permanent impairment, as a result of his injury, plaintiff continues to work full time as a carman, making approximately $32,000.00 per year.

Plaintiff's medical bills and lost wages as a result of the injury totaled $8,820.00. In addition, although Dr. Wardell testified that plaintiff would require occasional medicine and physical therapy costing anywhere from $50.00 to $300.00 per year, plaintiff has not been treated by a doctor since the end of 1991. Furthermore, plaintiff and his wife both testified at trial that although plaintiff's lifestyle has been limited somewhat by his injury, he still hunts, fishes, skis, and goes boating and snorkeling. In fact, the only recreational activity that plaintiff no longer enjoys is jogging. Trans., vol. III, pp. 284-286.

During his closing argument, plaintiff's counsel asked the jury to return a verdict of $450,000.00 in favor of the plaintiff stating that, "[Well,] when I spoke to you in the opening statement way back on Tuesday, I said that we'd be asking for substantial — a substantial verdict, and we are. Substantial but fair. We're asking you to award $450,000.00." Trans., vol. 4, p. 497, lines 8-12. After one hour and seventeen minutes of deliberation, the jury returned a $700,000.00 verdict in favor of the plaintiff. Thereafter, on June 20, 1995, defendant filed the aforementioned post trial motions.

· This court has considered and reviewed the exceptions made by defendant's counsel and denies the same, except as to the question of the excessiveness of the jury verdict.

"The law has wisely placed in the hands of the trial judge the power to exercise his sound discretion in supervising the verdicts of juries to prevent miscarriages of justice." *Smithey v. Sinclair Refining Co.*, 203 Va. 142, 148 (1961). Included in this power is the power to order remittitur. *Robinson v. Old Dominion Freight Line, Inc.*, 236 Va. 125, 128 (1988); Va. Code §§ 8.01-383 to 8.01-383.1. In asserting this power, however, a trial judge may not disturb a verdict supported by sufficient evidence and reached by a fair and impartial jury merely because he would have awarded damages of a lesser amount had he been a member of the jury. *Miller v. Vaughan Motor Co., Inc.*, 207 Va. 900, 904 (1967). Furthermore, absent a standard by which to measure damages, a court may not disturb a verdict which has been fairly reached and sustained by the evidence.

Thus, in order for a trial judge to substitute his opinion for that of the jury, he must make a finding based on the evidence that the verdict is "so excessive as to shock the conscience of the court or to compel the conclusion that the verdict was the product of passion or prejudice or some misunderstanding of the facts or the law." *Hogan v. Carter & Grinstead*, 226 Va. 361, 372 (1983). In determining what "shocks the conscience," each case must be judged on its own merits, according to its own peculiar facts and circumstances. What is fair in one case might be entirely inadequate or grossly excessive in another. *Smithey*, 203 Va. at 147.

A verdict is manifestly unfair if there is no reasonable relationship between the award and the damages disclosed by the evidence. *Smithey*, 203 Va. at 147. In *Smithey*, the Supreme Court of Virginia held that the trial judge did not err in holding that a jury verdict of $15,000.00 was excessive, and in ordering remittitur in lieu of a new trial, where the evidence introduced at the trial did not support a finding that plaintiff's back injury was permanent or disabling in any way. The court reasoned that the size of the verdict, which was extremely disproportionate to plaintiff's injuries, his medical expenses and loss of wages, was sufficient standing alone to "shock the conscience of the court and to cast upon it the stamp of unfairness." *Id.* at 148.

Furthermore, when estimating plaintiff's damages resulting from decreased earning capacity, a jury must take into consideration the fact that plaintiff's earnings from manual labor will naturally diminish during his lifetime, as well as the fact that the nature of the injury will affect plaintiff's future earnings capacity to varying degrees. *Chesapeake & O. Ry. v. Arrington*, 126 Va. 194, 220-21 (1919). In *Chesapeake & O. Ry. v. Arrington*, involving

a brakeman employed by the Chesapeake and Ohio Railway Company, who had his right hand and forearm severed four inches below the elbow, the Virginia Supreme Court held that a damages award of $30,000.00 was excessive. The court opined that the award, if invested at 6%[1] interest, would yield an amount in excess of plaintiff's annual income prior to the accident. *Id.* at 220. At the end of his life, plaintiff would be left with an estate of $30,000.00, which the court believed was "greater in amount than the average man of industry and intelligence accumulates in a lifetime." *Id.* Additionally, the court reasoned that if the jury failed to consider the fact that plaintiff's earning capacity was lessened, but not wholly destroyed, and the fact that plaintiff was forty-two years old and his earning capacity would naturally diminish during his lifetime, they also erred. *Id.* at 221.

In determining whether a jury award is excessive, courts will also look at the ratio of economic to non-economic damages. *See, Bassett Furniture v. McReynolds*, 216 Va. 897, 913 (1976) (holding that the trial court did not err in ordering remittitur of a verdict wherein the awarded damages were fifty times greater than the economic damages); *See also, Edmiston v. Kupsenel*, 205 Va. 198, 204 (1964) (holding that the trial court erred in ordering remittitur of a verdict wherein the awarded damages were thirty-one times greater than economic damages).

An analysis of the verdict, thus, begins with an evaluation of the evidence elicited at trial. Each of the medical experts, in the case at bar, testified that plaintiff suffers from a "small" disk herniation at the L5-S1 level. Additionally, two offered testimony that the injury resulted in a 5% to 7% permanent partial impairment. Most agreed that the disk would remain abnormal and would require occasional medical treatment including physical therapy, yet none were in agreement as to how often and at what cost. In addition, plaintiff testified that he still hunts, fishes, skis, and goes snorkeling and boating despite his injury. Trans., vol. III, pp. 352-53.

Plaintiff's medical bills and lost wages as a result of the injury totaled $8,820.00. Even assuming plaintiff will incur $300.00 a year in medical expenses during his lifetime, this produces a total economic loss of $14,000.00. The awarded damages, however, are fifty times this amount. Although plaintiff's injury was permanent and likely to limit his participation in some activities, it was hardly disabling and did not prevent him from

---

[1] Pursuant to § 5551 of the 1919 Code of Virginia, the legal rate of interest was 6%. Although the court does not explicitly state that the 6% rate it used to determine that the jury's award was excessive was the legal rate, we will assume for purposes of analysis that that is where they obtained this figure.

returning to his job. The current jury award of $700,000.00, less $14,000.00 in economic damages equals $686,000.00. Were plaintiff to invest this amount at 8% interest, plaintiff would earn $54,880.00 annually, an amount far greater than his current annual income. Thus, given the nature of plaintiff's injury, a jury award fifty times greater than the economic damages proven at trial "shocks the conscience of the court."

Furthermore, pursuant to Code Section 8.01-379.1, any party in a civil action may inform the jury, in the opening statement or closing argument, or both, of the amount of damages sought. In doing so, plaintiff may request an amount which is less than the *ad damnum* in the motion for judgment. Thus, the amount of damages plaintiff requests from the jury becomes the "amount of damages sought." Given that a plaintiff cannot recover more than he sues for, a court may upset an award of damages in excess of the amount plaintiff requested from the jury in his opening statement or closing argument. *See, Powell v. Sears, Roebuck & Co.*, 231 Va. 464 (1986) (citing *Hook v. Turnbull*, 10 Va. (6 Call) 85 (1806)). When plaintiff's counsel, in the case at bar, requested $450,000.00 in his closing argument he effectively made that the "amount of damages sought." As a result, the verdict is also excessive as a matter of law, because it is an award of damages greater than the amount of damages sought.

Upon a finding that a jury award is so excessive as to shock the conscience of the court, but that the evidence clearly supports a finding of liability,[2] a trial judge may in his sound discretion put the plaintiff on terms to accept a reduced amount, deemed to be reasonable compensation for his injuries, or he can

---

[2] Defendant incorrectly argues that the court should grant a new trial on the issue of liability, as well as damages, because plaintiff's negligence was the proximate cause of his injury. Pursuant to the Federal Employer's Liability Act ("FELA"), however, an employer can be held liable for his employees injuries if the evidence justifies a conclusion that employer negligence "played any part, even the slightest, in producing the injury." *Rogers v. Missouri Pac. RR*, 352 U.S. 500, 506, 77 S. Ct. 443, 448 (1957) (citing *Coray v. Southern Pac. Co*, 335 U.S. 520, 69 S. Ct. 275 (1949)). Thus, in FELA cases, plaintiff need not prove that defendant's breach was the proximate cause of plaintiff's injury, merely that it played any part, no matter how slight.

Plaintiff, in the case at bar has met this burden by presenting evidence that defendant was negligent in having the carmen remove the doors without proper equipment or in lieu of proper equipment and in failing to adequately train them in the proper techniques for removing door pans and that plaintiff's injury stemmed from the March 26, 1991, door pan removing incident.

order a new trial limited to damages. *Ford Motor Co. v. Bartholomew*, 224 Va. 421, 434 (1982) (citing *Edmiston*, 205 Va. at 202).

Just or reasonable compensation is compensation which bears a reasonable relation to the damages disclosed by the evidence. *See, Bassett Furniture*, 216 Va. at 912. In cases in which the Virginia Supreme Court has examined the excessiveness of verdicts, it has closely examined such factors as the severity of the injury, the degree of permanency and pain and the resulting level of disability, in addition to the ratio of economic to non-economic damages. *See, Seaboard Coast Line R. Co. v. Ward*, 214 Va. 543 (1974) (holding that a verdict of $200,000.00 was not excessive based on evidence that plaintiff had suffered a fracture of the elbow joint resulting in a 16% permanent disability); *Norfolk S. Ry. v. Rayburn*, 213 Va. 812 (1973) (holding that a verdict of $125,000.00 was not excessive based on evidence that plaintiff suffered a permanent and painful back injury leading to the removal of pieces of 3 levels of disk from his spine and $14,000.00 in economic damages); *Clark v. Chapman*, 238 Va. 655 (1989) (holding that a verdict of $290,000.00 was not excessive based on evidence that plaintiff suffered a 30% permanent disability in the use of her left arm, chronic pain, depression, and economic damages totaling $8,200.00). Federal Employee's Liability Act ("FELA") cases and non-FELA cases, similar to the case at bar, in which a judge's order of remittitur has been reviewed on appeal, are also instructive as to the appropriate award of damages in this case.

In a recent FELA case, *Caldwell v. Seaboard System RR.*, 238 Va. 148 (1989), *cert. denied*, 493 U.S. 1095, 110 S. Ct. 1169 (1994), the Virginia Supreme Court upheld a trial court's remittitur order of 30% of a jury verdict. The jury in *Caldwell v. Seaboard System RR*, awarded $1,500,000.00 to a railroad employee, who suffered partial hearing loss as the result of an on the job accident. Nearly $300,000.00 of the award was for economic damages. The balance, exceeding $1,200,000.00, was for pain, suffering, and partial disability. In sustaining the trial court's order of remittitur, the Supreme Court stated that although Caldwell's employment and social activities would be somewhat limited by his hearing and balance impediments, the evidence did not indicate that he would be unable to find another job or participate in most family activities requiring the ability to hear normally. *Id.* at 158. As such, the evidence did not indicate pain, suffering, or embarrassment substantial enough to support an award of $1,200,000.00 in non-economic damages. *Id.*

The court has also sustained orders of remittitur of 45% and 50% of jury verdicts in similar non-FELA cases. *See, Hogan*, 226 Va. 361; *Bassett Furniture*, 216 Va. 897. The Supreme Court in *Hogan* upheld a trial court's order of remittitur of $25,000.00 of a $50,000.00 jury verdict. Plaintiff in

*Hogan* suffered a fractured pelvis, muscle and soft tissue damage in her chest and back, and $2,155.00 in economic damages, as the result of an automobile collision. Although plaintiff testified that after the accident she could do little more than cook her own meals without assistance, there was evidence that her injuries were successfully treated with bed rest, physical therapy, and prescription drugs. The court found that based on all of the evidence elicited at trial, the trial judge was justified in finding that plaintiff's condition was not permanent and did not warrant an award which was twenty-five times greater than her economic damages.

The court has also upheld a trial court's order of remittitur of $450,000.00 of a $1,000,000.00 verdict wherein the award was roughly six times greater than the economic damages. *Bassett Furniture*, 216 Va. 897. In *Bassett Furniture*, plaintiff a thirty-three year old man, was rendered paraplegic when he fell through a hole on the job site sustaining $170,000.00 in economic damages. In reviewing the trial court's order of remittitur of 45% of the verdict, the Supreme Court held that although plaintiff's condition was classified as total and permanent disability, the trial judge had not abused his discretion in ordering remittitur based on the fact that he believed an award of $833,219.00 in "non-economic" damages was excessive. *Id.* at 913.

Given the evidence produced in the case at bar regarding the permanency and pain associated with plaintiff's herniated disk, as well as the degree of impairment and lessened earning capacity associated with said injury, an award of $280,000.00 would be reasonable compensation. Plaintiff's medical bills and lost wages as a result of the injury totaled $8,820.00. Although plaintiff's injury was permanent and likely to limit his participation in some activities, it was hardly disabling and did not prevent him from returning to his job. In fact, his impairment of 5% to 7% along with his $8,820.00 in economic damages, hardly compares to being rendered paraplegic, as plaintiff was in *Bassett Furniture*, wherein the Supreme Court upheld an order of remittitur of 45% of a verdict.

Plaintiff's injury, in the case at bar, is most closely analogous to plaintiff's injury in *Caldwell*, although Caldwell sustained far greater economic damages as the result of being unable to return to his job. Like Caldwell, plaintiff in the case at bar has and will have his employment and social activities limited by his injury. They will not be limited, however, to an extent which justifies an award of non-economic damages which is fifty-six times greater than the economic damages, which is what plaintiff would be left with were this court to order remittitur of only 30% of the jury verdict. In fact, plaintiff has testified that although his work and recreational activities have been limited, he is still able to go hunting, fishing, skiing, snorkeling, and boating.

In light of *Hogan, Bassett Furniture,* and *Caldwell,* this court orders plaintiff to remit $420,000.00 or 60% of the $700,000.00 awarded by the jury. The resulting award of $280,000.00 in damages leaves plaintiff with damages which are approximately thirty-two times greater than his economic damages. Given the permanency of his disability and its effect on his future earning capacity, combined with the fact that plaintiff is not entitled to more than the $450,000.00 sought in his counsel's closing argument, this court has determined that an award of $280,000.00 is reasonably related to the damages disclosed by the evidence.

For the foregoing reasons, Defendant's Post Trial Motion for Remittitur of the Jury Verdict is granted. Accordingly, plaintiff may elect to accept the reduced award or request a new trial limited to the issue of damages.