300

# CIRCUIT COURT OF CHESTERFIELD COUNTY

J. Chris Kollman, III

v.

C. E. Jordan

April 1, 2004

Case No. (Law) 02-60

BY JUDGE MARC JACOBSON

J. Chris Kollman, III, Plaintiff, was the Mayor of Colonial Heights, Virginia, and currently is a member of its City Council. While Plaintiff was a member of City Council, a federal housing project was constructed in Colonial Heights. Plaintiff alleges that he did not support the construction of the project and that there was nothing he could do to stop the construction of the project because the land was properly zoned. (Mot. for J. ¶¶ 6–7.) Plaintiff alleges that the City Council passed a resolution, which he voted in favor of, asking the Virginia Housing Development Authority to deny authority for construction and that he also wrote a letter asking that the authority be denied. (*Id.* ¶¶ 8–9.) Plaintiff further alleges that these actions, or other alleged actions, expressing his disapproval of the project are a "matter of public record." (*Id.* ¶ 11.)

Prior to the most recent election for certain members of the Colonial Heights City Council, C. E. Jordan, Defendant, published two advertisements in the *Petersburg Progress-Index*, a newspaper with general circulation in the City of Colonial Heights, asking voters not to vote for Plaintiff's bid for reelection and to instead vote for certain named challengers. Specifically alleged is the following excerpt of the first advertisement: "Kollman/Hales/Farley voted to approve construction of over

200 apartments on Archer Avenue, mainly Federally subsidized, low-income rental." (*Id.* ¶ 14.) Also specifically alleged is the following excerpt from that advertisement: "Obviously the product of a lack of zoning vigilance." (*Id.* ¶ 15.) The second advertisement was alleged in full: "Don't like over 200 mostly Federally subsidized, low-income apartments? Say Good-Bye to those who approved the apartments . . . Support and Vote for the 3 challengers who have publicly said 'NO MORE APARTMENT PROJECTS!' Vote Buran, Freeland, and Wood on Tuesday, May 7, 2002." (*Id.* ¶ 18.)

The Court ruled that the statements were not actionable as defamation per se but could be considered actionable as defamation per quod. Plaintiff admitted that he is a public official and is, therefore, subject the standards of *New York Times v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). At trial, the jury found for the Plaintiff and awarded Plaintiff $75,000 in compensatory damages, $125,000 in punitive damages, and prejudgment interest on the principle amount of $40,000, which equals $4,990.26. (Pl.'s Mem. in Opp. at 2.)

Defendant moves this Court to enter remittitur of the jury verdict or, in the alternative, grant Defendant a new trial on all issues or on the issue of damages only. (Mot. for New Trial and Remittitur at 5.)

Defendant argues that the jury's verdict should be set aside because: (1) the printed words were "clearly opinion"; (2) there was no evidence of *New York Times* malice (reckless disregard for the truth or high degree of awareness of probable falsity); and (3) that the words are protected by the U.S. and Virginia Constitutions.

The statements published in the newspaper ads by Jordan, with the exception of "Obviously the product of a lack of zoning vigilance," which could be regarded as a matter of opinion, are statements of fact verifiable as true or untrue. *See Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1288 (1987). "Factual statements made to support or justify an opinion ... can form the basis of an action for defamation." *Williams v. Garraghty*, 249 Va. 224, 233, 455 S.E.2d 209, 215 (1995) (citing *Swengler v. ITT Corp.*, 993 F.2d 1063, 1071 (4th Cir. 1993) (applying Virginia Law)). Further, in rendering its verdict, apparently the jury found that Plaintiff proved actual malice, that is, "with knowledge that [the statements were] false or with reckless disregard of whether [they were] false or not" by clear and convincing evidence. *See New York Times v. Sullivan*, 376 U.S. 254, 279–80 (1964).

Even if, for the sake of argument only, the Court disagrees with the jury's verdict, the Court cannot rule as a matter of law that the verdict was contrary to the evidence nor without evidence to support it. *See* Virginia Code § 8.01-430. "The trial judge cannot substitute his conclusion for that of the

jury merely because he would have voted for a different verdict if he had been on the jury. The weight of a jury's verdict, when there is credible evidence upon which it can be based, is not overborne by the trial judge's disapproval." *Kim v. Douval Corp.*, 259 Va. 752, 756, 529 S.E.2d 92, 94 (2000). Publication of false information is not protected by the First Amendment or the Virginia Constitution. "Publications of the truth regarding the character of a public officer, and relating to his qualifications for such office, made with intent to inform the people, are not libelous; but the publication of falsehood and calumny against public officers and candidates for public office, is a very high offense." *Williams Printing Co. v. Saunders*, 113 Va. 156, 177, 73 S.E. 472, 475 (1912) (citing *Commonwealth v. Clap*, 4 Mass. 163 (1808)).

"The law has wisely placed in the hands of the trial judge the power to exercise his sound discretion in supervising the verdicts of juries to prevent miscarriages of justice." *Smithey v. Sinclair Refining Co.*, 203 Va. 142, 148, 122 S.E.2d 872, 877 (1961). This includes the power to order remittitur. Va. Code § 8.01-383; *Robinson v. Old Dominion Freight Line, Inc.*, 236 Va. 125, 128, 372 S.E.2d 142, 143–44 (1988). The trial court has a large measure of discretion in remitting excessive verdicts because it saw and heard the witnesses at trial. *Richmond Newspapers, Inc. v. Lipscomb*, 234 Va. 277, 300, 362 S.E.2d 32, 45 (1987).

In exercising this power, however, a trial judge may not disturb a verdict supported by sufficient evidence and reached by a fair and impartial jury merely because he would have awarded damages of a lesser amount had he been a member of the jury. *Miller v. Vaughan Motor Co., Inc.*, 207 Va. 900, 904, 153 S.E.2d 266, 269 (1967). Therefore, in order for a trial judge to substitute his opinion for that of the jury, he must make a finding based on the evidence that the verdict is "so excessive as to shock the conscious of the court or to compel the conclusion that the verdict was the product of passion or prejudice or some misunderstanding of the facts or the law." *Hogan v. Carter & Grinstead*, 226 Va. 361, 372, 310 S.E.2d 666, 672 (1983). In determining what "shocks the conscience," each case must be judged on its own merits according to its own facts and circumstances. *Smithey*, 203 Va. at 147, 122 S.E.2d at 876.

A verdict is manifestly unfair if there is no reasonable relationship between the award and the damages disclosed by the evidence. *Hatfield v. Norfolk & Western Ry. Co.*, 46 Va. Cir. 494, 496 (Norfolk 1995). In *Smithey v. Sinclair Refining Co.*, the Supreme Court of Virginia held that the size of the jury's verdict, which was extremely disproportionate to plaintiff's injuries, was sufficient standing alone to "shock the conscious of the court and to cast upon it the stamp of unfairness." *Smithey*, 203 Va. at 148, 122

S.E.2d at 877. In determining whether a jury award is excessive, "courts will also look at the ratio of economic to non-economic damages." *Hatfield*, 46 Va. Cir. at 497 (citing *Bassett Furn. Indus., Inc.*, 216 Va. at 913, 224 S.E.2d at 333).

The remedy for an excessive verdict is either to set it aside and award a new trial, or to put the successful party upon terms to release the excess or else submit to a new trial; but neither course of action is warranted if the verdict merely appears to be large and more than the trial judge would have awarded. *See Campbell v. Hankins*, 217 Va. 800, 801–02, 232 S.E.2d 794, 795 (1977); *Hogg v. Plant*, 145 Va. 175, 181, 133 S.E. 759, 761 (1926); *see also Davenport v. Aldrich*, 207 Va. 271, 148 S.E.2d 768 (1966) (holding that a trial judge cannot usurp the function of the jury as triers of fact if the amount awarded by their verdict is supported by sufficient evidence and is reached by a fair and impartial jury).

In considering remittitur, the record must indicate the grounds relied upon if remittitur is granted. It is not appropriate for a trial judge to simply disagree with the jury's damage evaluation and arbitrarily substitute his opinion for theirs. However, if it appears from the record to the trial judge that a verdict was plainly excessive and remittitur should be ordered, factors in evidence relevant to a reasonable evaluation of the damages incurred and to be incurred must be considered and analyzed in determining if the recovery after remittitur bears a reasonable relation to the damages disclosed by the evidence. "Reasonableness" is the standard by which the exercise of discretion will be tested by the Supreme Court of Virginia. *Bassett Furn. Indus., Inc. v. McReynolds*, 216 Va. 897, 912, 224 S.E.2d 323, 332 (1976); *see Campbell*, 217 Va. 800, 232 S.E.2d 794 (finding that there had been an abuse of discretion in ordering remittitur). There is no fixed standard for measuring punitive damage, and the amount of the award is largely a matter of discretion with the jury. *National Ass'n of Letter Carriers v. Austin*, 213 Va. 377, 386, 192 S.E.2d 737, 743 (1972).

In *Williams v. Garraghty*, 249 Va. 224, 455 S.E.2d 209 (1995), Garraghty, a prison warden, sued Williams, a subordinate employee, seeking damages for defamation and insulting words, as well as other charges resulting from a memorandum written by Williams. In the memorandum, Williams accused Garraghty of sexual harassment. Following a three-day trial, the jury returned a verdict in Garraghty's favor awarding him compensatory damages for $152,597 and punitive damages in the amount of $125,000. *Id.* at 227–28, 445 S.E.2d at 212. Thereafter, Williams moved the trial court to set aside the verdict, arguing that Garraghty did not prove that the statements in the memorandum were false or, if false, that she was negligent in making the statements. Williams also claimed that the punitive damages award should

be set aside because the "record did not disclose clear and convincing evidence that she had acted with actual malice." *Id.* at 228, 445 S.E.2d at 212.

The trial court found that the evidence supported the compensatory damages award, but that the punitive damages award was excessive. The trial court required Garraghty to elect whether to accept a new trial or a remittitur of a portion of the punitive damages award. Upon Garraghty's election, under objection, the trial court overruled the motion to set aside the verdict and ordered Garraghty to remit $100,000 of the punitive damages award. *Id.*

The Supreme Court of Virginia held that "when a trial court orders or refuses to order a remittitur of punitive damages in a defamation action, [the Supreme Court will] make an independent examination of the entire record to determine whether the trial court acted properly. In doing so, [the Supreme Court] will give substantial weight to the trial court's action and affirm it, unless, from [their] view of the record, the trial court acted improperly." *Id.* at 237, 445 S.E.2d at 217. In concluding that the trial court acted properly in ordering the remittitur, the Court noted that Williams's annual salary was $32,000 and that her only substantial asset was her one-half interest in her dwelling, purchased for $29,500 approximately 18 years before the trial. The Court agreed with the trial court's finding that "the jury's award of punitive damages was excessive and could 'result in financial ruin to [Williams]'." *Id.*

In the instant case, even if the jury's verdict was not without evidence to support a verdict of some amount, remittitur should be ordered. There was little, if any, evidence of any economic damage to the Plaintiff and no actual evidence of actual physical injury or damages of any kind; allegedly, there was evidence that Plaintiff did in his mind perceive that people did not relate to or respect him as much as a result of the subject newspaper articles. Plaintiff did, however, allegedly suffer damage to his reputation as well as other emotional damages and there was evidence that Plaintiff was more reserved in City Counsel meetings and in dealing with the public. Defendant's acknowledgement under cross-examination that, even knowing the published statements at issue to be false, he would publish them again, demonstrated actual malice.

The Defendant's net worth was stipulated at trial to be $242,900.00. The jury's award totaled $204,990.26, thus leaving Defendant with a remaining net worth of $37,909.74. As in *Williams v. Garraghty*, this award is excessive "and could result in financial ruin to Defendant." Further, no reasonable relationship exists between the jury's award and Plaintiff's damages. *See Hatfield*, 46 Va. Cir. at 496. The verdict was so disproportionate to the

Plaintiff's injury that it, alone, is enough to "shock the conscious of the court." *See Smithey*, 203 Va. at 148, 122 S.E.2d at 877.

Pursuant to Virginia Code §§ 8.01-383 and 8.01-383.1, in setting aside a verdict, a court must either order a new trial on all issues, a new trial limited to damages, or put the Plaintiff on terms to remit a portion of the award. Considering the damages suffered by Plaintiff, the ratio of economic to non-economic damages suffered by Plaintiff, and the actual malice demonstrated by Defendant, the Court concludes the award that could reasonably be sustained in the instant case is $15,000 in compensatory damages and $35,000 in punitive damages. Therefore, the Court will order that the Plaintiff remit $154,990.26 of the jury award to the Defendant or, in the alternative, will order that a new trial be scheduled, limited to the issue of damages only. Plaintiff must advise the Court which action he chooses within twenty-one days of the issuance of this letter opinion.