PENDLETON, President,
delivered the resolution of the Court.
This is truly stated to be a stale transaction, commencing in 1752. It was the administration of a small estate which was devised in 1765, and yet no account is settled by the executors till after all their deaths in 1786, when a partial one is made up by the executors of the survivor.
This had a bad aspect respecting the executors; but since no fraud or misconduct is imputed to them in the manager ment of the estate, nor any apparent advantage, which they could or did derive to themselves from the omission, but on the contrary a probable disadvantage, in having articles disallowed for defect in the proof, which they might have justified at an earlier period, we-inclined to attribute *87 it to inattention in them, and confidence on the part of the legatees in their integrity, rather than to any impure motives, and, therefore, think it would be too severe to deny them justice on account of that omission of a duty; for, such perhaps it is, although the law only directs them to render accounts when desired, *
When the children came of age, they might make private adjustments of the accounts with the executors, to their satisfaction, without reducing them to form. This appears to have been the case as to Edward Jones, the principal acting executor, from 1752 to 1758, who never made up any account with the Court; yet, till before the Auditor’s in 1796, we hear of no complaint on that head: on the contrary, the defendant acknowledges that he received all his wife’s part of the estate, except any money which might appear to be in the hands of Richard Jones.
With these impressions, the Court proceeded to examine the justice of the case, and think the decree right as to the two articles discussed in Court, disallowing the 77L 15s. as not sufficiently proved, though probably just, and allowing the items for the quit-rents.
Mr. Wickham was right in his position, that joint obligations survive as well as joint rights, but it does not apply; since here was no existing obligation, when the survivor-ship took place.
The testator provided a fund in the hands of his executors to pay these quit-rents, which they yearly applied accordingly, and are allowed those payments as a set-off against that fund, to the surplus of which, the defendant was entitled one-fourth.
We then considered the claim of the executors for commissions and interest on his balance.
The commissions are disallowed, because a reward is devised to the executors by the will.
But interest is allowed, because it is natural justice that. he who has the use of another’s money should pay interest for it.
It was objected, that the executor had the use of the money previous to 1774, without accounting for interest; a just objection, if true. We examined the account from *88 1759, when Richard’s administration commenced, to 1762, when Williams married; the balance then in Richard’s hands was 125?. 14s. 10¿?.; he paid 83?. 15s. 3d. and from that time the estate was in his debt to 1774. It is true, the disallowance of articles now turns that balance against him, so as to reduce the 100?. advanced in 1774, to 53?. 13s. 4c?. ;on that balance as an agreed loan, the plaintiff ought to have interest. There is, therefore, error in not allowing that interest: And the decree must be reversed with costs: And a decree entered for 53?. and interest from July 29, 1774, and the other i’eservations in the decree.*

[* See amendment by act Feb. 19, 3823, c. 28, § 1, which makes it the duty of the executors, &c. to settle their accounts within two years from the time of their qualification» Any executor, &e0 failing so to do, forfeits all right to any commission or com* pensation, for services rendered in ad® ministering the estate committed to them, &c«J

[* Jones v. Watson, 3 Call, 253.]