Present:  All the Justices

ABE SHEPARD, ADMINISTRATOR OF
THE ESTATE OF ERNESTINE SHEPARD

v.  Record No. 002776  OPINION BY JUSTICE CYNTHIA D. KINSER
                                    November 2, 2001
CAPITOL FOUNDRY OF
VIRGINIA, INC., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
James F. D'Alton, Jr., Judge


In this wrongful death action, the dispositive question to be decided on appeal is whether the circuit court erred in remitting portions of a jury verdict for the plaintiff.  Because we conclude that the circuit court failed to consider the evidence relevant to damages in the light most favorable to the plaintiff, we will reverse the judgment of the circuit court and reinstate the jury verdict.

FACTS AND MATERIAL PROCEEDINGS

Ernestine Shepard died as a result of injuries sustained in an automobile accident that occurred in the City of Petersburg.  At the time of the accident, she was driving a pick-up truck and had stopped her vehicle immediately behind a tractor-trailer owned by Capitol Foundry of Virginia, Inc. ("Capitol Foundry"), and operated by its employee, Jack Guthrie, Jr.  Guthrie had stopped the tractor-trailer in the left travel lane of East Bank Street

while waiting for parking space at a repair shop so that he could drive the tractor-trailer into the shop's parking lot.[1] After the decedent brought her pick-up truck to a stop behind the tractor-trailer, a third motorist crashed into the rear of the decedent's vehicle, causing the front of her vehicle to collide with the rear of the tractor-trailer.

The decedent was 67 years of age at the time of her death and had been married to her husband, Abe Shepard, for 44 years. She is survived by her husband and six adult children. The appellant, Abe Shepard, Administrator of the Estate of Ernestine Shepard, brought this wrongful death action against Capitol Foundry, Guthrie, and two other individuals who are not parties to this appeal.

At trial, Mr. Shepard presented evidence regarding the emotional hardships and loss he has suffered as a result of the death of Mrs. Shepard. Mr. Shepard spoke of preparing his own meals now and eating them alone. He stated that since his wife's death, he has eaten more "fast food" than ever before during his lifetime and that he has lost about 15 pounds in weight. Mr. Shepard acknowledged that, during his 30 years of military service, his wife handled the

---

[1] Guthrie stopped at the repair shop because one of the tires on the tractor-trailer had "blown out" earlier that

family's business matters and continued to do so after he retired.  So, in his words, "when she passed, I was lost." Finally, Mr. Shepard described his frequent visits to his wife's grave:

> I just feel like I have accomplished something whenever I would go out there and talk with her as if she was going to talk back, knowing that she can't.  I tell her about the children.  I tell her about my life and what I'm going through since she's been gone, how much I miss her, and all of that.  You would think that somebody was talking to me the way I be talking out there sometimes.  And I say a prayer or two, and then I leave.

Five of the Shepard children also testified at trial about their loss and discussed the relationship that they had enjoyed with their mother through the years and her influence upon the lives of her children.  Two of the daughters were living at home with their parents at the time of the accident.  Mrs. Shepard was close to all her children, and several of them portrayed her as the primary care-giver when they were growing up because their father's military career frequently took him away from home.  For example, the youngest son described the strength his mother displayed in caring for the family while Mr. Shepard was on active military duty in Vietnam.  Another son testified that his mother took care of the finances and the "spiritual things" in the home and was "a crutch" for his

_____

day.

father.  Although Merritt Shepard, an Army officer residing in Germany, did not testify at the trial, his twin sister explained that her brother stayed in touch with his mother through telephone conversations, especially on holidays. All the children attended their mother's funeral.

During closing argument at trial, the plaintiff asked the jury to award damages in the amount of $1,000,000 for Mr. Shepard, and $500,000 for each of the six children. After deliberations, the jury returned a verdict in favor of the plaintiff and assessed damages in the amount of $1,700,000, plus interest on that sum from April 23, 1996, the date of the accident.  Of the total damages awarded, the jury distributed $1,100,000 to Mr. Shepard and $100,000 to each of the six adult children.

In post-trial motions, Capitol Foundry and Guthrie asked the court to set aside the jury verdict and grant a new trial or, in the alternative, for remittitur of the verdict.[2]  Following argument by the parties, the circuit court ruled from the bench and denied the motion to set

---

[2] Capitol Foundry and Guthrie also moved the court to reconsider its previous denial of their motion for a mistrial.  They had based that motion on an alleged inflammatory remark by the plaintiff's counsel during closing argument.  However, since the motion for a mistrial came after the jury retired to deliberate, the court concluded that it was untimely.

aside the jury verdict. However, the court concluded that the damages awarded were excessive and therefore remitted the jury's award to $750,000 for Mr. Shepard and $50,000 for Merritt Shepard (the son living in Germany). The court also remitted the award of pre-judgment interest and allowed interest only from August 16, 2000, the date of the jury verdict. The court did not remit the amount of damages awarded to the other five children.

In the order memorializing its bench ruling, the court enunciated the following reasons for its decision: (1) the damages were so excessive as to shock the conscience of the court; (2) the jury misconceived the facts and the law to the extent that it was instructed that a verdict should not be based on bias or sympathy; (3) the award was out of proportion to the injuries suffered, thus suggesting the verdict was not the product of a fair and impartial decision; (4) Mr. Shepard received $100,000 more than requested and was 83 years old at the time of the trial; (5) Merritt Shepard did not testify at trial, yet received the same amount as the other children who did testify; (6) more interest was awarded than requested; and (7) there was no evidence regarding loss of income, expenses for treatment of the decedent, or funeral expenses. The court also incorporated in its order the remarks that it had

5

previously made from the bench at the close of the hearing on the defendants' post-trial motions. In those remarks, the court alluded to certain statements made by the plaintiff's attorney during closing argument and suggested that those statements inflamed and prejudiced the jury.[3] The court also characterized the assessment of pre-judgment interest and the award of $100,000 more to Mr. Shepard than requested during closing argument as being in the nature of punitive damages.

Pursuant to Code § 8.01-383.1(A), the plaintiff elected to accept the remitted sums under protest rather than to submit to a new trial on all issues. We awarded the plaintiff this appeal.

ANALYSIS

In their request that we affirm the judgment of the circuit court, Capitol Foundry and Guthrie assert that the court clearly stated its reasons for remitting the jury verdict and that those reasons support the court's finding that the verdict was excessive. They also contend that the recovery after remittitur bears a reasonable relationship to the damages, considering the fact that the issue of

_____

[3] At least one of those allegedly inflammatory remarks was the subject of the defendants' motion for a mistrial made after the jury retired to deliberate. In their post-

6

liability was contested and all the losses claimed were non-pecuniary.  Thus, Capitol Foundry and Guthrie argue that the court did not abuse its discretion in ordering remittitur in this case.  We do not agree.

When a verdict is challenged on the basis of alleged excessiveness, a trial court is compelled to set it aside "if the amount awarded is so great as to shock the conscience of the court and to create the impression that the jury has been motivated by passion, corruption or prejudice, or has misconceived or misconstrued the facts or the law, or if the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision."  Edmiston v. Kupsenel, 205 Va. 198, 202, 135 S.E.2d 777, 780 (1964); accord Poulston v. Rock, 251 Va. 254, 258, 467 S.E.2d 479, 481 (1996).  "Setting aside a verdict as excessive . . . is an exercise of the inherent discretion of the trial court and, on appeal, the standard of review is whether the trial court abused its discretion."  Poulston, 251 Va. at 258-59, 467 S.E.2d at 482 (citing Bassett Furniture v. McReynolds, 216 Va. 897, 911, 224 S.E.2d 323, 332 (1976)).

---

trial motions, Capitol Foundry and Guthrie pointed to other allegedly inflammatory statements.

The process of determining whether a trial court abused its discretion in ordering remittitur involves two steps. First, we must find in the record not only the trial court's conclusion that the verdict was excessive, but also an explanation demonstrating that the court, in reaching its conclusion, considered " 'factors in evidence relevant to a reasoned evaluation of the damages.' " Poulston, 251 Va. at 259, 467 S.E.2d at 482 (quoting Bassett Furniture, 216 Va. at 912, 224 S.E.2d at 332). Second, we must ascertain whether the amount of recovery after remittitur bears a " 'reasonable relation to the damages disclosed by the evidence.' " Id.

Both of these steps require an evaluation of the evidence relevant to the issue of damages. In making that evaluation, the trial court, as well as this Court, is required to consider the evidence in the light most favorable to the party that received the jury verdict, in this case the plaintiff. Id. at 261, 467 S.E.2d at 483 (citing Caldwell v. Seaboard Sys. R.R., 238 Va. 148, 155, 380 S.E.2d 910, 914 (1989)). If there is evidence, when viewed in that light, to sustain the jury verdict, then remitting the verdict is error. Edmiston, 205 Va. at 202-03, 135 S.E.2d at 780.

In the present case, the circuit court failed to view the evidence in the light most favorable to the plaintiff and thus erred in its determination that the verdict was excessive. Both from the bench and in its order, the court listed several evidentiary factors that are relevant to the question of damages and whether the amounts awarded were excessive. However, the court limited its review of the evidence to those factors, all of which are adverse to the plaintiff. See Poulston, 251 Va. at 261-62, 467 S.E.2d at 483 (trial court incorrectly limited its review of evidence to certain testimony and failed to consider other testimony). It is not apparent from the record before us that the court also considered the evidence that supports the amount of damages awarded by the jury. In other words, the court viewed the evidence in the light most unfavorable to the plaintiff. For example, the evidence shows not just a man of 83 years of age, but also a husband who suddenly and tragically lost his wife of 44 years – a wife described by one of the sons as his father's "crutch." The evidence also reveals a husband who is still so distraught over his wife's death that he goes to her grave once or twice each month and tells her about the children.

Similarly, with regard to Merritt Shepard, the court focused solely on the fact that he did not appear and

9

testify at the trial as did the other five children. However, the court apparently did not consider the fact that Merritt attended his mother's funeral, and that she was very close to all her children and held the family together while Mr. Shepard was overseas on military duty.

Finally, with regard to the award of pre-judgment interest, the court surmised that the jury simply wanted to punish the defendants and decided that interest should run "from the date of trial since this delay is something that is not attributable to either side." Yet, the court clearly instructed the jury that an award of interest was a matter entirely in its discretion:

> As to interest, you have a choice. You may award interest. You may not award interest. It is up to you. If you do award interest, you have a choice from the date of the accident up until the date of the trial. Or you have a choice of not to award interest . . . .

This instruction is in accord with Code § 8.01-382, which gives the fact-finder the discretion to decide whether to "provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence."

"Prejudgment interest is normally designed to make the plaintiff whole and is part of the actual damages sought to be recovered." Monessen Southwestern Ry. v. Morgan, 486

10

U.S. 330, 335 (1988), quoted in Dairyland Ins. Co. v. Douthat, 248 Va. 627, 631, 449 S.E.2d 799, 801 (1994). " '[I]nterest is allowed, because it is natural justice that he who has the use of another's money should pay interest for it.' " J.W. Creech, Inc. v. Norfolk Air Conditioning Corp., 237 Va. 320, 325, 377 S.E.2d 605, 608 (1989) (quoting Jones v. Williams, 6 Va. 85, 87, 2 Call 102, 106 (1799)).

Again, the court failed to consider the evidence in the light most favorable to the plaintiff. An example is the court's reference to the lack of evidence regarding loss of income, expenses for treating the decedent, and funeral expenses. Yet, we have said that evidence of sorrow, mental anguish, and solace can be sufficient to support a jury's award. Jan Paul Fruiterman, M.D. & Assocs. v. Waziri, 259 Va. 540, 545, 525 S.E.2d 552, 555 (2000). Code § 8.01-52 specifies that, in a wrongful death action, the verdict "shall include, but may not be limited to, damages for . . . [s]orrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent."

CONCLUSION

Because the circuit court failed to consider "factors in evidence relevant to a reasoned evaluation of the

11

damages" in the light most favorable to the plaintiff, Bassett Furniture, 216 Va. at 912, 224 S.E.2d at 332, we conclude that the court abused its discretion in finding the jury verdict excessive and remitting a portion of the damages awarded.  As acknowledged by Capitol Foundry and Guthrie on brief, "the inadequacy or excessiveness of each verdict must be determined on the facts of the case . . . ."  Williams Paving Co. v. Kreidl, 200 Va. 196, 204, 104 S.E.2d 758, 764 (1958).  The facts of the present case, when considered in the light most favorable to the plaintiff, demonstrate that the verdict was not excessive.

Accordingly, we will reverse the judgment of the circuit court, reinstate the jury verdict, and enter final judgment for the plaintiff.[4]

Reversed and final judgment.

---

[4] In light of our decision, we do not address the plaintiff's other two assignments of error: (1) that, in deciding the motion for remittitur, the circuit court erred in considering alleged inflammatory statements by plaintiff's counsel during closing argument since those statements were not the subject of a timely motion for a mistrial, and (2) that the circuit court erred in concluding that certain remarks by plaintiff's counsel were improper.