Present:  All the Justices

ROBERT BALDWIN

v.  Record No. 061050      OPINION BY JUSTICE DONALD W. LEMONS
                                      April 20, 2007
JAMES L. MCCONNELL

           FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                        Randall D. Smith, Judge

        In this appeal, we consider whether the trial court

abused its discretion in ordering remittitur of a jury award

of compensatory and punitive damages.

                  I.  FACTS AND PROCEEDINGS BELOW

        For approximately twenty years, Robert Alexander Baldwin

("Baldwin") and James L. McConnell ("McConnell") were both

employed at General Electric Company ("GE").  GE had a "zero

tolerance" policy which provided that any violent behavior at

the work place would result in termination of employment.

While employed at GE, a physical altercation occurred between

McConnell and Baldwin.  This incident resulted in both

parties' employment being terminated under the "zero

tolerance" policy.  Each party blamed the other party for

causing the altercation.  McConnell sued Baldwin, seeking

compensatory and punitive damages for assault and battery.[1]

_____

        [1] The motion for judgment included other claims and
included "General Electric Energy" and "General Electric
Company" as defendants.  The only parties and claims relevant
to this appeal are the allegations of McConnell against
Baldwin and Baldwin against McConnell, each seeking
compensatory and punitive damages for assault and battery.

Baldwin filed a counterclaim for assault and battery, seeking to recover $100,000 in compensatory damages and $350,000 in punitive damages.

At trial, Baldwin testified that while McConnell and he were in a meeting with other co-workers and a "shop manager," McConnell stated that Baldwin "need[ed] a piss test."  Co-workers "chuckl[ed]" and "laugh[ed]" at the comment.  Baldwin felt that McConnell's statements at the meeting had "insinuate[d] in front of [his] co-workers and manager that [Baldwin was] using illegal controlled substances."  Baldwin also testified that he was "embarrassed" because McConnell "humiliate[d him] in front of management as well as [his] co-workers."

The next day, McConnell made a similar comment to Baldwin.  Baldwin responded, "if anybody needs a piss test around here, it's you."  Baldwin then decided to leave for the day.  McConnell asked Baldwin to come over to him, but Baldwin walked out the door.  After exiting the building, Baldwin turned around and came back towards the exit door.  "[T]he instant that [Baldwin] stepped in front of the door," McConnell put his hands on Baldwin's chest and slammed Baldwin to the concrete sidewalk, causing Baldwin's cap and safety glasses to go "flying."  Baldwin hit his head on the concrete, and his "tailbone" hit the ground.  Consequently, Baldwin

2

suffered a "knot" on his head and soreness to both his head and tailbone. Baldwin also testified that he was humiliated knowing that his co-workers saw him get knocked down. More specifically, Baldwin felt "it [was] an insult to [his] dignity."

Additionally, Baldwin testified that McConnell had "hurt [his] family" because he had been the "sole provider" for the family and that he had lost his job because of the altercation with McConnell. During cross-examination, McConnell testified that he owned stock in GE worth approximately $343,506.29.

The jury denied recovery to McConnell; however, on Baldwin's counterclaim, the jury awarded $240,000 in compensatory damages and $100,000 in punitive damages. Because the compensatory damages award was above Baldwin's ad damnum of $100,000, the trial court, without objection, reduced the compensatory damages award to $100,000. On a motion for remittitur, the trial court found that "the jury's verdict shock[ed] the conscience of the [c]ourt," evidenced that "the jury misconceived or misconstrued the facts or the law," and that the "award [was] so out of proportion to the injuries" that "their verdict was not the product of a fair and impartial decision." The trial court further reduced the compensatory damages award to $1,000, and the punitive damages award to $10,000.

Baldwin filed a timely notice of appeal to this Court. We granted Baldwin's petition for appeal on three assignments of error:

1. The Trial Court abused its discretion when it failed to consider evidence relevant to a reasoned evaluation of the damages.

2. The Trial Court abused its discretion when it failed to determine if the jury award was reasonably related to the damages disclosed by the evidence.

3. The Trial Court acted improperly in remitting the punitive damages awarded by the jury.

## II. ANALYSIS

### A. Compensatory Damages

With regard to remittitur of compensatory damages, we stated in Shepard v. Capitol Foundry of Va., Inc., 262 Va. 715, 720-21, 554 S.E.2d 72, 75 (2001) (quotations and citations omitted), that:

> When a verdict is challenged on the basis of alleged excessiveness, a trial court is compelled to set it aside if the amount awarded is so great as to shock the conscience of the court and to create the impression that the jury has been motivated by passion, corruption or prejudice, or has misconceived or misconstrued the facts or the law, or if the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision. Setting aside a verdict as excessive . . . is an exercise of the inherent discretion of the trial court and, on appeal, the standard of review is whether the trial court abused its discretion.

4

Determining whether a trial court abused its discretion in ordering remittitur of compensatory damages involves two steps:

> First, we must find in the record not only the trial court's conclusion that the verdict was excessive, but also an explanation demonstrating that the court, in reaching its conclusion, considered factors in evidence relevant to a reasoned evaluation of the damages. Second, we must ascertain whether the amount of recovery after remittitur bears a reasonable relation to the damages disclosed by the evidence.

> Both of these steps require an evaluation of the evidence relevant to the issue of damages. In making that evaluation, the trial court, as well as this Court, is required to consider the evidence in the light most favorable to the party that received the jury verdict.

Id. at 721, 554 S.E.2d at 75 (quotations and citations omitted).

In this case, the jury awarded Baldwin $240,000 in compensatory damages and $100,000 in punitive damages. The trial court ultimately reduced Baldwin's damages to $1,000 in compensatory damages and $10,000 in punitive damages. In remitting the jury's award, the trial court did not distinguish between the type of damages and the trial court's explanation did not demonstrate that it considered the evidence in the light most favorable to Baldwin.

Instruction number 31 instructed the jury as follows:

5

    If you find your verdict in favor of
McConnell, Baldwin or both, then in determining
the damages to which they may be entitled <u>you
may consider</u> any of the following that you
believe by the greater weight of the evidence
was caused by an assault and battery:  <u>Any
shame, humiliation, embarrassment or indignity
to feelings that he suffered</u>.

    You may also consider in awarding damages
<u>the insulting character of the injury, the
reason for the injury and any other
circumstances which make the injury more
serious</u>, if any of these things are shown by
the evidence.

    Your verdict shall be for such sum as will
fairly and fully compensate the parties for the
<u>damages sustained as a result of the assault
and battery</u>.

(Emphasis added.)  The instruction, which was given without

objection and became the law of the case, permitted the jury

to consider "[a]ny shame, humiliation, embarrassment or

indignity" that Baldwin suffered as a result of McConnell's

assault and battery.  The instruction's broad language also

permitted the jury to consider "the insulting character of the

injury, the reason for the injury and <u>any other circumstances</u>

<u>which make the injury more serious</u>.  (Emphasis added.)

However, in remitting the jury's verdict for compensatory

damages, the trial court did not address the humiliation

Baldwin suffered, the insulting character of the injury or

"other circumstances which make the injury more serious."

    We hold that the trial court abused its discretion in not

complying with the first step of the analysis required in

6

Shepard, namely an analysis of the damages awarded by the jury upon consideration of the evidence in the light most favorable to Baldwin.  Additionally, the trial court failed to "ascertain whether the amount of recovery after remittitur bears a reasonable relation to the damages disclosed by the evidence" as required by the second step of the Shepard analysis.  262 Va. at 721, 554 S.E.2d at 75 (quotation omitted); see also Smithey v. Sinclair Refining Co., 203 Va. 142, 146, 122 S.E.2d 872, 875 (1961) ("In a case where the verdict of a jury is attacked on the ground that it is excessive, . . . [i]f the verdict merely appears to be large and more than the trial judge would have awarded had [he] been a member of the jury, it ought not to be disturbed.").

                        B. Punitive Damages

While we review remittitur of compensatory damage awards utilizing "abuse of discretion" as the standard of review, we review the remittitur of punitive damage awards de novo upon independent review of the record.

The jury was instructed in pertinent part:

> If you find that the plaintiff and or
> defendant Baldwin is entitled to be compensated
> for his damages, and if you further believe by
> the greater weight of the evidence that the
> other party acted with actual malice toward the
> opposing party or acted under circumstances
> amounting to a willful and wanton disregard of
> the parties' rights, then you may also award
> punitive damages to punish that party for his

7

actions and to serve as an example to prevent others from acting in a similar way.

With regard to remittitur of a jury award of punitive damages, we stated in Poulston v. Rock, 251 Va. 254, 263, 467 S.E.2d 479, 484 (1996) (quotation omitted), that

in reviewing the order of a trial court imposing or refusing to impose a remittitur of punitive damages in a defamation action, we shall make an independent examination of the entire record to determine whether the trial court acted properly. In doing so, we will give substantial weight to the trial court's action and affirm it, unless, from our view of the record, the trial court acted improperly.

Additionally, we stated:

Review of the amount of punitive damages includes consideration of reasonableness between the damages sustained and the amount of the award and the measurement of punishment required, whether the award will amount to a double recovery, the proportionality between the compensatory and punitive damages, and the ability of the defendant to pay.

Id. (citations omitted).  While Poulston involved punitive damages in the context of defamation, the analysis applied in Poulston extends beyond defamation actions.

Other states confirm this analytical approach.  For example, in Management Computer Servs. v. Hawkins, Ash, Baptie & Co., 557 N.W.2d 67, 70 (Wis. 1996), the Supreme Court of Wisconsin addressed claims of breach of contract, conversion, and unjust enrichment, and the award of punitive damages.  The court considered whether the trial court correctly ordered a

8

new trial on punitive damages unless the prevailing party accepted reduction in the award from $1.75 million to $50,000. Id. at 74-75, 80.  With regard to remittitur, the Supreme Court of Wisconsin stated that the trial court "set forth conclusory reasons for reducing the jury's punitive damages award" and did not "analyze the evidence or set forth its reasons for ordering remittitur with particularity."  Id. at 81.  Therefore, the Supreme Court of Wisconsin reviewed "the entire record ab initio to determine whether the jury's award [wa]s excessive, and if it [wa]s, what amount of punitive damages [wa]s reasonable."  Id.  Furthermore, it stated

> in determining whether an award of punitive damages is excessive, courts should consider the grievousness of the acts, the degree of malicious intent, whether the award bears a reasonable relationship to the award of compensatory damages, the potential damage that might have been caused by the acts, the ratio of the award to civil or criminal penalties that could be imposed for comparable misconduct, and the wealth of the wrongdoer.
> . . .
>
> In addition, a reviewing court must consider the reasonableness of punitive damages on a case-by-case basis, considering the relevant circumstances in each particular case.

Id. at 82.

In the case at bar, the trial court's explanation for granting McConnell's motion for remittitur did not distinguish between compensatory and punitive damages.  "The general rule is that there is no fixed standard for the measure of

9

exemplary or punitive damages and the amount of the award is largely a matter within the discretion of the jury." Worrie v. Boze, 198 Va. 533, 544, 95 S.E.2d 192, 201 (1956). Philip Morris Inc. v. Emerson, 235 Va. 380, 414-15, 368 S.E.2d 268, 287 (1988). Furthermore, as we explained in Poulston, judicial review of the amount of punitive damages upon motion for remittitur requires:

1. consideration of reasonableness between the damages sustained and the amount of the award,

2. the measurement of punishment required,

3. whether the award will amount to a double recovery,

4. the proportionality between the compensatory and punitive damages, and

5. the ability of the defendant to pay.

Poulston, 251 Va. at 263, 467 S.E.2d at 484.

The jury awarded $240,000 in compensatory damages. But for the ad damnum clause, the amount would not have been reduced to $100,000 before remittitur. We will consider the jury's punitive damages award in light of the original award of $240,000.

There was ample evidence of actual malice and willful and wanton behavior on the part of McConnell. Additionally, with regard to the punishment required for such behavior and consideration of the deterrent effect upon others who may act

in similar fashion, we cannot say that the jury award is excessive.

The award of punitive damages according to the jury instructions was based upon malice and willful and wanton conduct while the compensatory award was based upon actual injury sustained as well as "shame, humiliation, embarrassment or indignity to feelings."  According to instructions to the jury, the compensatory damages were also based upon "the insulting character of the injury, the reason for the injury and any other circumstances which made the injury more serious."  Given the clear determination of the basis for each award and the ample evidence supporting each award, our independent review of the record does not suggest double recovery in this case.

The relationship between the award of $240,000 in compensatory and $100,000 in punitive damages is not unreasonable or strikingly out of proportion.  We note that the punitive damage award approved in Poulston was two and one-half times (250%) the compensatory award while here the punitive damage award is less than one-half (41%) of the jury's compensatory award.[2]

---

[2] See Philip Morris USA v. Williams, ___ U.S. ___, ___, 127 S.Ct. 1057, 1061-62 (2007) (suggesting that punitive damages two, three or four times the size of the compensatory damage award accord with "longstanding historical practice" and that punitive damages which multiply the compensatory

11

McConnell's financial condition is relevant on the issue of punitive damages and was properly considered by the jury. Hamilton Dev. Co. v. Broad Rock Club, 248 Va. 40, 44, 445 S.E.2d 140, 143 (1994). The jury was permitted to consider the value of McConnell's stock, an indication of his ability to pay, in determining the amount of the punitive damages.

In this case, our independent review of the punitive damages award leads us to conclude that the award should not have been set aside.[3] Poulston, 251 Va. at 263, 467 S.E.2d at 484. We cannot say that a punitive damages award of $100,000 shocks the conscience of the Court or is otherwise inappropriate in light of McConnell's egregious conduct. Accordingly, we hold that the jury's award of $100,000 in punitive damages was not excessive as a matter of law.

III. CONCLUSION

---

award by "single digits" are more likely to comport with due process than higher punitive awards), citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003).

[3] We acknowledge that many courts analyze punitive damages awards and remittitur based on due process concerns because "punitive damages are quasi-criminal punishment." Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 54 (1991). See Philip Morris USA, ___ U.S. at ___, 127 S.Ct. at 1061-62; State Farm, 538 U.S. at 425; BMW of North America, Inc. v. Gore, 517 U.S. 559, 575-85 (1996). In this case, however, there has been no challenge to the award of punitive damages based upon denial of due process. See generally Schneckloth v. Bustamonte, 412 U.S. 218, 235-36 and nn. 16-17 (1973). See also Nusbaum v. Berlin, 273 Va. 385, 406, 641 S.E.2d 494, 505 (2007) (appellate review of due process arguments waived by failure to raise the constitutional issue below); Westvaco

Because the trial court did not conduct the analysis required by Shepard for remittitur of an award of compensatory damages, we hold that the trial court abused its discretion. Upon a de novo review of the record using the analysis required by Poulston for remittitur of an award of punitive damages, we hold that the trial court erred in remitting the punitive damage award. Accordingly, we will reverse the judgment of the trial court, reinstate the jury verdict as reduced to the ad damnum clause of plaintiff's pleading, in the amount of $100,000 as to compensatory damages and $100,000 as to punitive damages, and enter final judgment for Baldwin.

Reversed and final judgment.

---

Corp. v. Columbia Gas of Virginia, Inc., 230 Va. 451, 459, 339 S.E.2d 170, 174 (1986) (same).