Demetrius Nicole HUGHSTON,
Plaintiff,

v.

NEW HOME MEDIA and Philip
Jacoby, Defendants.

Civil Action No. 1:06–1362.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 2, 2008.

Peter Charles Cohen, Charlson Bredehoft and Cohen, Reston, VA, for Plaintiff.

Laura Elizabeth Jordan, Law Offices of Laura E. Jordan PC, Washington, DC, for Defendants.

### MEMORANDUM ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Defendant Philip Jacoby's Motion for Remittitur or, Alternatively, for a New Trial. This case involves Plaintiff Nicole Hughston's claims that her supervisor, Defendant Philip Jacoby, sexually assaulted and battered her during a three month period in which they were both employed by New Home Media. The case was tried by a jury in November 2007. At the close of all the evidence, the Court granted Mr. Jacoby's motion for judgment as a matter of law with respect to Ms. Hughston's assault claim. The jury returned a verdict in favor of Ms. Hughston on the remaining claim of battery, awarding her $40,000 in compensatory damages and $150,000 in punitive damages. Three issues exist before the Court: (1) Whether the Court should remit Plaintiff's $40,000 compensatory damage award to ten percent (10%) or less on the basis that the jury's award was excessive and the product of the jury's passion and prejudice; (2) Whether the

Court should remit Plaintiff's $150,000 punitive damage award as unreasonable and disproportionate; and (3) Whether the Court should order a new trial. The Court denies Defendant's Motion for Remittitur or, Alternatively, for a New Trial because the Court finds that: (1) the jury's compensatory damage award is not so excessive as to shock the conscience of the Court and does not demonstrate that the jury was motivated by passion or prejudice; (2) the jury's punitive damage award is reasonable, does not amount to double recovery, and is not strikingly out of proportion to the compensatory damage award; and (3) a new trial is not warranted because the jury's verdict is not against the clear weight of the evidence, is not based on false evidence, and will not result in a miscarriage of justice.

## I. BACKGROUND

Plaintiff, Ms. Nicole Hughston, initiated this lawsuit against her former employer, New Home Media, and her former supervisor, Mr. Philip Jacoby, alleging that Mr. Jacoby sexually assaulted and battered her in her workplace. Ms. Hughston, an African American woman in her early thirties, was employed by New Home Media as a bookkeeper. (Transcript of Trial at 28:10–11, *Hughston v. Jacoby*, 1:06cv1362). Mr. Jacoby, New Home Media's accountant who is a Caucasian male in his mid–50s, became Ms. Hughston's supervisor in October 2005. (Am.Complt.¶ 20). During the week, Mr. Jacoby supervised Ms. Hughston via telephone and e-mail from his primary place of employment in Maryland. However, Mr. Jacoby worked at New Home Media's Virginia office on Saturdays, where he sat less than 10 feet away from Ms. Hughston. (*Id.* at 30:3–9).

Shortly after Mr. Jacoby began supervising Ms. Hughston, he developed an inappropriate sexual attraction to her, which is evidenced by the e-mail solicitations for sex he sent to her; solicitations that Ms.

Hughston rebuffed. The e-mails became increasingly more lewd and explicit as time passed by. For example, on Friday, November 11, 2005, Mr. Jacoby sent Ms. Hughston an e-mail inquiring, "What time to you plan on getting there, and are you going to wear a bra?" (Pl. Trial Ex. 6). On December 8, 2005, Mr. Jacoby e-mailed Ms. Hughston the following:

> No harm in asking—h*ll, I've asked you a couple of things that you've said NO to, and that won't deter me!

> Still can't believe you'd rather Christmas Shop than wrestle with me at the office! I thought you would have visited Victoria Secrets in anticipation of our games!!!

> Oh, for Christmas, I want oral from you.

(Pl. Trial Ex. 22). By December 14, 2005, Mr. Jacoby was sending Ms. Hughston e-mails inquiring as to "are we going to sleep together soon? ?" (Pl. Trial Ex. 29), and "So, will we be together soon? ? ?" (Pl. Trial Ex. 30). As December progressed, Mr. Jacoby sent such e-mails to Ms. Hughston as, "I would really love to see your lush lips wrap[p]ed around my hard c*ck!" (Pl. Trial Ex. 38).

By January 25, 2006, Mr. Jacoby was inundating Ms. Hughston with numerous sexually graphic e-mails each day. On that day alone, Mr. Jacoby sent Ms. Hughston at least four e-mails with explicit solicitations for sex. At 9:45 a.m., Mr. Jacoby wrote, "Hon, I really want to sh*g your black a* *! You turn me on." (Pl. Trial Ex. 46). At 12:09 p.m., Mr. Jacoby sent two e-mails to Ms. Hughston in which he told her to, "Wear a skirt and no panties this weekend so I can b*ng you easily[,]" and asked in another e-mail sent at the same time, "ARE WE GOING TO F*CK IN JAMAICA? ? ? ?" (Pl. Trial Exs. 41, 50). He followed up those e-mails at 4:13 p.m. by sending another e-mail to Ms. Hughston, this time reminding her, "Don't

forget to have a neaked [sic] c* *ter and easy access for Sunday—I want to b*ng you, b*tch!!!" (Pl. Trial Ex. 43).

Mr. Jacoby testified at trial that he was attracted to Ms. Hughston and that his e-mails constituted his way of inviting Ms. Hughston to enter into a sexual liaison with him. He contended that some of his e-mails were merely playful banter that he believed were welcomed by Ms. Hughston. Ms. Hughston, however, denied that she had invited Mr. Jacoby's sexual solicitations, as evidenced by the fact that she either ignored Mr. Jacoby's sexually charged e-mails, or expressly told him, "No, Phil." (Pl. Trial Ex. 23).

In addition to flooding Ms. Hughston with e-mail solicitations during the week, Mr. Jacoby also made unwelcome advances towards her on the Saturdays both he and she were at New Home Media's office. Ms. Hughston testified at trial that Mr. Jacoby "would touch me inappropriately on my breast, underneath my shirt, he would try to unsnap my bra. He would put his hands between my legs. He would kiss me. He rubbed my shoulders." (Pl. Ex. 1 at 110:4–7). Ms. Hughston testified about twelve specific instances when Mr. Jacoby touched her buttocks, breasts, crotch, face, and shoulders, and kissed her. (*See* Pl.Ex. 1 at 110:25–111:7; 113:6–7; 114:16; 116:2–3; 116:8; 116:16–22; 117:9–10; 117:23–24; 118:20–119:17; 122:4–124:1; 124:22–125:24).

Each of the unwanted advances occurred during the course of conducting business. For example, Ms. Hughston testified that "Mr. Jacoby would come up behind me while I was sitting at the desk. Occasionally he would go over the transaction with me and then he would just kiss me on the cheek." (*Id.* 110:23–111:1). Ms. Hughston described another instance in which Mr. Jacoby came up behind her and "just started fumbling with [her] bra strap...." (*Id.* 114:15–16). And yet another instance when he came up behind her while she was sitting at her desk and "he braised [her] breast" before focusing on her computer screen in order to answer Ms. Hughston's work related question. (Pl.Ex. 1119:9–17). Ms. Hughston also testified that on one occasion when she had solicited Mr. Jacoby's assistance while seated at her desk, Mr. Jacoby "reached his hand down between [her] legs, and [she] slapped him and he said, ooh, that turns me on." (*Id.* at 125:18–12).

As a result of Mr. Jacoby's conduct, Ms. Hughston suffered great indignity, as well as feelings of shame, humiliation, embarrassment, and fear. (*See id.* at 112:9–14; 113:14–19; 115:4–8; 118:3–8; 120:3–4; 124:8–10; 124:19–21; 126:12–18; 128:16). At trial, Ms. Hughston stated she "felt ... mad, violated." (*Id.* at 126:16). She testified that she was "agitated and frustrated because when I worked with Mr. Jacoby, I didn't know what to expect or ... how the day would transpire, how he would be, how he would feel, if he would want to touch me or didn't want to touch me, if he wanted to cuss me out, or if he wanted to talk dirty to me." (Pl.Ex. 1 at 124:11–18). Further, she testified that "there was a sense of fear. I felt threatened and I worried a lot." (*Id.* at 124:19–20). Ms. Hughston's sense of fear, along with New Home Media's refusal to intervene in Mr. Jacoby's conduct, prompted Ms. Hughston to resign from New Home Media *on* February 8, 2006. (Am.Complt.¶¶ 57–58).

Ms. Hughston reached a settlement agreement with Defendant New Home Media regarding, among other claims, her hostile work environment and wrongful/constructive discharge claims under Title VII of the Civil Rights Act of 1964; however, her tort claims of assault and battery against Mr. Jacoby were presented to a jury in November 2007.

Prior to trial, Mr. Jacoby moved *in limine* to exclude the sexually explicit e-mails he sent Ms. Hughston. The Court denied Mr. Jacoby's motion, ruling that the e-mails were relevant to Mr. Jacoby's state of mind under Federal Rule of Evidence 401, and that their probative value outweighed their prejudicial effect under Federal Rule of Evidence 403. At trial, the e-mails were presented to the jury through the testimony of both Mr. Jacoby and Ms. Hughston.

At the close of evidence, Mr. Jacoby moved for judgment as a matter of law with respect to the claim of assault. The Court granted Mr. Jacoby's motion, finding that the evidence did not demonstrate Ms. Hughston was in fear of imminent harm at the time Mr. Jacoby sent her the sexually explicit e-mails propositioning her for sex. The jury returned a verdict in favor of Ms. Hughston on the remaining claim of battery, awarding her $40,000 in compensatory damages and $150,000 in punitive damages.

Mr. Jacoby now seeks to remit the jury's compensatory damage and punitive damage awards on the grounds that each award is excessive in light of the evidence produced at trial, and are the products of the jury's passion, prejudice and improper reliance upon the sexually explicit e-mails admitted into evidence for the sole purpose of proving his state of mind. Alternatively, should the Court deny his request for remittitur, Mr. Jacoby seeks a new trial on the same basis.

# I. DISCUSSION

## A. Standard of Review

### 1. *Remittitur*

■ "There is no specific provision for remittitur under the Federal Rules of Civil Procedure, but it is well established that a remittitur should be ordered when a jury award will result in a miscarriage of justice." *Bennett v. Fairfax County*, 432

F.Supp.2d 596, 599 (E.D.Va.2006)(citing *Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir.1998)). The decision as to whether a damage award is excessive and should therefore be set aside is "entrusted to the sound discretion of the district court." *Robles v. Prince George's County, Maryland*, 302 F.3d 262, 271 (4th Cir.2002). Under the practice of remittitur, "the trial court orders a new trial unless the plaintiff accepts a reduction in an excessive jury award." *Cline*, 144 F.3d at 305.

### 2. *Motion for a New Trial*

■ Pursuant to Rule 59 of the Federal Rules of Civil Procedure, a district court may set aside the jury's verdict and grant a new trial only if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Lovell v. BBNT Solutions, LLC*, 295 F.Supp.2d 611, 617–18 (E.D.Va. 2003) (citing *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587–94 (4th Cir.1996)). "The grant or denial of a motion for a new trial is entrusted to the sound discretion of the district court and will be reversed on appeal only upon a showing of abuse of discretion." *Bennett*, 432 F.Supp.2d at 599 (citing *Cline*, 144 F.3d at 305).

## B. Analysis

### 1. *Remittitur of Compensatory Damages*

■ The Court denies Defendant Jacoby's Motion for Remittitur with respect to the jury's compensatory damage award because the Court finds that the $40,000 award is not so excessive as to shock the conscience of the Court; nor does it demonstrate that the jury was motivated by

passion, corruption, or prejudice, or that the jury misconceived or misconstrued the facts or the law.

 Whether the jury's award of compensatory damages for the state tort claim of battery should be remitted or otherwise set aside as excessive is a matter of Virginia law. *Stamathis v. Flying J., Inc.*, 389 F.3d 429, 438 (4th Cir.2004) (citing *Gasperini v. Center for Humanities*, 518 U.S. 415, 438, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996)). Under Virginia law,

> [w]hen a verdict is challenged on the basis of alleged excessiveness, a trial court is compelled to set it aside 'if the amount awarded is so great as to shock the conscience of the court and to create the impression that the jury has been motivated by passion, corruption, or prejudice, or has misconceived or misconstrued the facts or the law, or if the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision.'

*Shepard v. Capitol Foundry of Virginia, Inc., et. al.*, 262 Va. 715, 554 S.E.2d 72, 75 (2001) (quoting *Edmiston v. Kupsenel*, 205 Va. 198, 135 S.E.2d 777, 780 (1964); *Poulston v. Rock*, 251 Va. 254, 467 S.E.2d 479, 481 (1996)). *See also Baldwin v. McConnell*, 273 Va. 650, 643 S.E.2d 703, 705 (2007). In making such a determination, the Court must evaluate the evidence relevant to the issue of compensatory damages, viewing such evidence in the light most favorable to the prevailing party— here Ms. Hughston. *Shepard*, 554 S.E.2d at 75 (citing *Poulston*, 467 S.E.2d at 483). If there is evidence, when viewed in the light most favorable to Ms. Hughston, to sustain the jury's compensatory damages award, then remitting the award is error. *Id.* (citing *Edmiston*, 135 S.E.2d at 780).

Mr. Jacoby argues that the jury's $40,000 compensatory damages award should be remitted by ninety percent (90%) because the evidence regarding the harm caused by his conduct is "extremely scanty." (Def's Br. in Supp. at 2). Although Mr. Jacoby acknowledges that Ms. Hughston "testified to shame, embarrassment, humiliation, and other similar feelings," he asserts that she failed to identify a tangible harm or loss as she did not miss work or otherwise lose income and did not experience any physical manifestations of her distress. *Id.* Thus, Mr. Jacoby contends Ms. Hughston's uncorroborated emotional harm only warrants a minimal award of compensatory damages. The Court disagrees.

Ms. Hughston went to work at New Homes Media to carry out her responsibilities. Mr. Jacoby had other ideas about Ms. Hughston and barraged her, on a seemingly daily basis, with a variety of unwelcome and unprovoked sexual solicitations. The record demonstrates that Mr. Jacoby frequently commented on Ms. Hughston's breasts, her buttocks, her clothing, and he described to her what he would like to do to her. Mr. Jacoby's graphic language was not confined to verbal solicitations. Mr. Jacoby's e-mails to Ms. Hughston were pornographic in many instances, and beyond what a proper judge ought to recall in a federal judicial opinion. Suffice it to say, Mr. Jacoby's pornographic e-mails should rate high in the judicial hall of shame for memorable, "I can not believe a person said that in an e-mail." More importantly, Mr. Jacoby's sexually graphic e-mails corroborate Ms. Hughston's testimony that Mr. Jacoby inappropriately touched her breasts, buttocks, crotch, and shoulders on numerous occasions when they were both present at New Home Media by manifesting Mr. Jacoby's intent to seek sexual gratification from Ms. Hughston. There can be no doubt that Mr. Jacoby's conduct in fulfilling his sexual desires by inappropriately touching Ms. Hughston invoked strong feelings of

shame, humiliation, embarrassment, indignity, worry, anger, and fear. And such emotional damage warrants more than a minimal amount of compensatory damages.

The record reflects that the Court instructed the jury as follows:

If you find your verdict in favor of Ms. Nicole Hughston, then in determining the damages for which she is entitled, you may consider any of the following that you believe by the greater weight of the evidence was caused by the battery of Mr. Philip Jacoby[:] any shame, humiliation, embarrassment or indignity to her feelings that Ms. Hughston suffered.

(Pl.Ex. 2 at 193:3–9). The Court also instructed the jury that Dit could consider the "insulting character of [the] injury" in awarding compensatory damages. (*Id.* at 193:10–17). Further, the Court instructed the jury that Ms. Hughston "is not required to prove the exact amount of her damage. But [that] she must show sufficient facts and circumstances to permit [the jury] to make a reasonable estimate . . . ." (*Id.* at 193:18–194:2).

The e-mails Mr. Jacoby sent to Ms. Hughston, in which he repeatedly told her that he wanted "oral [sex] from [her]", (Pl. Trial Ex. 22), that he wanted to "sh*g [her] black a* * ", (Pl. Trial Ex. 46), and that he wanted to "b*ng [her]", (Pl. Trial Ex. 50), establish that Mr. Jacoby wanted to engage in a sexual liaison with Ms. Hughston and illustrate the great indignities Ms. Hughston was forced to endure each time she came into contact with Mr. Jacoby. These e-mails leave absolutely no doubt that Mr. Jacoby inappropriately touched Ms. Hughston with the intent to sexually gratify himself when presented with the opportunity to do so.

Given Mr. Jacoby's intentions and the emotional toll such conduct understandably has on the person on the receiving end of such conduct, the jury's estimate of Ms. Hughston's damages is reasonable.

Ms. Hughston testified at trial that she "was shocked" when Mr. Jacoby kissed her on the cheek, (Pl.Ex. 1 at 112:9–14), that she thought Mr. Jacoby "was gross" when he kissed her on the mouth (*Id.* at 113:14–19), that she was "appalled", "embarrassed" and "humiliated" when Mr. Jacoby attempted to unsnap her bra (*Id.* at 115:1–8), and that he "hurt" her when he "smacked" her buttocks when she walked past him to make photocopies. (*Id.* at 117:8–25). Ms. Hughston also testified that she was "embarrassed", "humiliated", "frustrated" and "angry" when Mr. Jacoby touched her breast while she was seated at her desk working on the computer and that she "felt afraid" when Mr. Jacoby approached her while she was standing at a file cabinet and touched her breast under her shirt. (*Id.* at 123:18–124:10). She further testified that she "felt threatened and [she] worried a lot" because the touchings had occurred on "several different occasions" and she "didn't know what to expect or . . . how the day would transpire, how he would be, how he would feel, if he would want to touch [her] or . . . if he wanted to talk dirty to [her]." (Pl.Ex. 1 at 124:8–21).

Ms. Hughston's testimony demonstrates that she repeatedly suffered great indignity and emotional stress at the hands as a result of Mr. Jacoby's unsolicited, repeated touchings and batteries for a period spanning three months. Her feelings of humiliation, embarrassment and fear following Mr. Jacoby's unwelcome physical advances, standing alone, support the jury's $40,000 compensatory damage award. Additionally, in calculating a compensatory damage award, the jury could consider the "insulting character of [the] injury." (Pl. Ex. 2 at 193:10–17), Ms. Hughston testified that while engaging in the unsolicited sexual touchings, Mr. Jacoby made vile and insulting comments. (*See, e.g.* Pl.Ex. 1 at 120:11:13) ("[Mr. Jacoby] would make his little comments to me that he wanted to

f\*ck me and put his d\*ck in me and why won't I give him some"). There can be few more insulting injuries than being subjected to unwelcome sexual touchings by a supervisor, accompanied by lewd solicitations for sex, in the workplace.

Although Ms. Hughston did not seek medical assistance and did not lose income during the time period Mr. Jacoby sexually battered her, the Virginia Supreme Court has held that such physical harm and pecuniary losses are not required in order to sustain a compensatory damage award. "[E]vidence of sorrow, mental anguish, and solace" are sufficient, by themselves, to support a jury's compensatory damage award. *Shepard,* 554 S.E.2d at 77.[1] Furthermore, Mr. Jacoby conceded at trial that there is no requirement that evidence of battery be corroborated. (Pl.Ex. 2 at 161:17–21). Given the nature of Mr. Jacoby's unsolicited conduct, the sexually explicit comments that accompanied his unwelcome sexual touchings, Ms. Hughston's testimony regarding the indignity and humiliation she suffered as a result of Mr. Jacoby's conduct, and Mr. Jacoby's position as Ms. Hughston's supervisor, the jury's compensatory damage award of $40,000 does not shock the Court's conscience.

Moreover, the jury instructions expressly permitted the jury to consider "any shame, humiliation, embarrassment or indignity to her feelings that Ms. Hughston suffered" as well as the "insulting character of [the] injury." (Pl.Ex. 2 at 193:3–9; 10–17). Similar instructions were given in *Baldwin,* 643 S.E.2d at 705–706, and were cited approvingly. These instructions indicate that the jury considered Ms. Hughston's testimony regarding her humiliation,

embarrassment, indignity, fear, and anger, as well as the lewdness of Mr. Jacoby's conduct when calculating the compensatory damage award. The Court, therefore finds that the $40,000 award does not create the impression that the jury was motivated by passion, corruption or prejudice in the wake of Mr. Jacoby's sexually explicit e-mails to Ms. Hughston. Further, Ms. Hughston's testimony regarding the impact of Mr. Jacoby's unwanted physical touchings and the accompanying sexual solicitations, when viewed in light of the Court's instructions to the jury, demonstrate that the jury did not misconceive or misconstrue the facts or the law.

Finally, the $40,000 award is not out of proportion to Ms. Hughston's emotional injuries. Ms. Hughston testified that Mr. Jacoby repeatedly subjected her to such indignities as touching her buttocks, breasts, crotch, and shoulders, while Ms. Hughston was at work over a three month period. She further testified that she was humiliated and embarrassed by Mr. Jacoby's contact and that she was constantly "worried" because she did not know what to expect from him.

No person should have to endure a daily dose of sexual solicitations and unwelcome sexual touchings in the workplace. This Court has no difficulty concluding that Ms. Hughston's sensibilities were offended and that she was humiliated by Mr. Jacoby.

Accordingly, the Court finds that the jury's $40,000 compensatory damages award is not excessive and thus does not warrant remitting.

### 2. Remittitur of Punitive Damages

■ The Court denies Defendant Jacoby's Motion for Remittitur with respect to

---

**1.** The Fourth Circuit has also held that a "plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress." *Bryant v. Aiken Reg'l Med. Ctrs., Inc.,* 333 F.3d 536, 547 (4th Cir. 2003). For example, the Fourth Circuit affirmed a large compensatory damage award of which $240,000 was based solely upon the plaintiff's testimony of "insult, pain, and mental suffering." *Stamathis,* 389 F.3d at 439.

the jury's punitive damage award because the award is reasonable, does not amount to double recovery, and is not strikingly out of proportion to the amount of compensatory damages. Nor, contrary to his contentions, does the amount of the award suggest that jury punished Mr. Jacoby for the sexually graphic e-mails he sent Ms. Hughston.

 Review of a jury's punitive damage award involves questions of both state and federal law. *Browning–Ferris Industries v. Kelco Disposal,* 492 U.S. 257, 278, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). In a "lawsuit where state law provides the basis of decision, the propriety of an award of punitive damages for the conduct in question, and the factors the jury may consider in determining their amount, are questions of state law." *Id.* at 278–79, 109 S.Ct. 2909. Federal law, however, governs a district court's review of a jury's punitive damage award. *Id.* at 279, 109 S.Ct. 2909. Thus,

[i]n reviewing an award of punitive damages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under [Federal Rule of Civil Procedure] 59, whether a new trial or remittitur should be ordered.

*Id.See also Atlas Food Sys. & Servs., Inc.,* 99 F.3d at 593. The Court of Appeals is confined to reviewing a district court's ruling under an abuse of discretion standard. *Id.*

 In Virginia, "[t]he general rule is that there is no fixed standard for the measure of exemplary or punitive damages and the amount of the award is largely a matter within the discretion of the jury." *Baldwin,* 643 S.E.2d at 707 (citing *Worrie v. Boze,* 198 Va. 533, 95 S.E.2d 192, 201 (1956); *Philip Morris, Inc. v. Emerson,* 235 Va. 380, 368 S.E.2d 268, 287 (1988)).

[J]udicial review of the amount of punitive damages upon [a] motion for remittitur requires: (1) consideration of reasonableness between the damages sustained and the amount of the award, (2) the measurement of punishment required, (3) whether the award will amount to a double recovery, (4) the proportionality between the compensatory and punitive damages, and (5) the ability of the defendant to pay.

*Id.* (citing *Poulston,* 467 S.E.2d at 484).

With respect to punitive damages, the Court instructed the jury as follows:

If you find that Ms. Nicole Hughston is entitled to be compensated for her damages, and if you further believe by the greater weight of the evidence that Mr. Philip Jacoby acted with actual malice towards Ms. Hughston or acted under circumstances amounting to willful and wanton disregard of Ms. Hughston's rights, then you may also award punitive damages to Ms. Hughston to punish Mr. Jacoby for his actions and to serve as an example to prevent [ ] others from acting in a similar way.

The purpose of awarding punitive damages is to provide deterrence and retribution. They are designed to punish unlawful conduct and to deter its repetition. Punitive damages, however, should not be grossly excessive nor should it be awarded arbitrarily.

(Pl.Ex. 2 at 194:3–18).

The Court's review of the record reveals ample evidence of actual malice and wilful and wanton behavior on the part of Mr. Jacoby, separate and distinct from Mr. Jacoby's sexually explicit e-mails. Ms. Hughston testified that Mr. Jacoby sexually battered her on multiple occasions while she was working at New Home Media. Specifically, she testified that "Mr Jacoby would touch [her] inappropriately on [her] breast, underneath [her] shirt, he would

try to unsnap [her] bra. He would put his hands between [her] legs. He would kiss [her]. He rubbed her shoulders." (Pl.Ex. 1 at 111:4–7). In conjunction with these unwelcome touchings, Mr. Jacoby also made lewd comments to Ms. Hughston, such as asking Ms. Hughston, "why won't [she] let him f*ck [her]." (*Id.* at 111:25). Ms. Hughston's testimony demonstrates that she suffered great indignities at the hands of Mr. Jacoby that understandably caused her to feel embarrassment, humiliation, fear, and anger. (*See id.* at 112:9–14; 113:14–19; 115:4–8; 118:3–8; 120:3–4; 124:8–10; 124:19–21; 126:12–18; 128:16). Given that Mr. Jacoby was Ms. Hughston's direct supervisor and that Mr. Jacoby's conduct persisted over a three month period, the jury's punitive damage award is reasonable in the wake of the compensable damages Ms. Hughston sustained.

With regard to the measurement of punishment required, Mr. Jacoby's conduct—especially in light of his supervisory position was reprehensible, inexcusable, and is deserving of punishment that is significant in nature. The number of unwelcome touchings Ms. Hughston endured illustrates Mr. Jacoby's blatant disregard for Ms. Hughston's right to be free from unwanted sexual contact in the workplace and further shows his inability and unwillingness to take "no" for an answer. Although no criminal charges were brought against Mr. Jacoby, he could have been charged with sexual battery each time he touched Ms. Hughston, a class 1 misdemeanor under Virginia law. *See* Va.Code § 18.2–67.4(A)(1)(making it a crime to intentionally touch another person's intimate parts against the person's will with the intent to sexually molest, arouse, or gratify).

The Court also finds that the jury's punitive damage award does not amount to a double recovery because the jury was instructed to base its award of compensatory damages on *any* damages Ms. Hughston suffered, including any shame, humiliation, or embarrassment to her feelings. The jury was also instructed to take into account the "insulting character of the injury" when calculating Ms. Hughston's compensatory damages. Whereas the Court instructed the jury to award punitive damages only if it believed Mr. Jacoby acted with actual malice toward Ms. Hughston or under circumstances amounting to a willful and wanton disregard of Ms. Hughston's rights. (Pl.Ex. 2 at 194:3–25). In so doing, the Court noted that the purpose of a punitive damage award is to provide deterrence and retribution, as well as to punish and prevent future conduct. *Id.* The Court presumes that the jury follows the instructions of the Court. *Stamathis,* 389 F.3d at 442. Given the clear determination of the basis for each award and the ample evidence supporting each award, Ms. Hughston did not receive a double recovery.

Further, the 3.75 ratio between the jury's $40,000 compensatory damage award and $150,000 punitive damage award is not "unreasonable or strikingly out of proportion." *Baldwin,* 643 S.E.2d at 707. In *Baldwin,* the Supreme Court of Virginia noted the Supreme Court's recent decision in *Philip Morris USA v. Williams,* — U.S. ——, 127 S.Ct. 1057, 166 L.Ed.2d 940 (2007), which reaffirmed the Supreme Court's precedent that "the longstanding historical practice of setting punitive damages at two, three, or four times the size of compensatory damages ... is "instructive," and that "[s]ingle-digit multipliers are more likely to comport with due process." 127 S.Ct. at 1061–62 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 425, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)). Here, the single-digit ratio of 3.75 is within the range the Supreme Court ruled was "likely to comport with due process." As the 3.75

ratio falls within the constitutionally acceptable range, and is well below Virginia's statutory cap of $350,000,[2] remittitur is not justified on the basis of proportionality. *See BMW of N. Am. v. Gore,* 517 U.S. 559, 573, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

Finally, Mr. Jacoby made no representations at trial, and makes no representations in his moving papers, that he is unable to pay the jury's award. Accordingly, the Court declines to remit the jury's punitive damage award.

### 3. New Trial

Having concluded that the jury's compensatory and punitive damage awards were not excessive, the Court denies Defendant Jacoby's Alternative Motion for a New Trial.

█ On a Rule 59 motion, a district court may set aside the jury's verdict and grant a new trial only if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Bennett,* 432 F.Supp.2d at 602 (citing *Atlas Food Sys. & Servs., Inc.,* 99 F.3d at 594; *Lovell,* 295 F.Supp.2d at 617–18). "[T]o receive a new trial on liability and damages, the jury verdict must be made excessive by 'passion and prejudice springing from indulgence, in the jury room, in such feelings, [that] may not be cured by a remittitur, but only a new trial.'" *Bennett,* 432 F.Supp.2d at 602 (quoting *Ford Motor Co. v. Mahone,* 205 F.2d 267, 273 (4th Cir.1953)). The grant or denial of a motion for a new trial is committed to the sound discretion of the district court and will be reversed on appeal only upon a showing of abuse of discretion. *Cline,* 144 F.3d at 305.

█ First, as previously discussed, the jury's verdict, both with respect to liability and compensatory damages, is not against the clear weight of the evidence; nor is it the product of passion and prejudice sparked by the admission of Mr. Jacoby's sexually graphic e-mails to Ms. Hughston. Ms. Hughston testified that Mr. Jacoby, on multiple occasions spanning a three month period, touched her buttocks, breasts and shoulders, and kissed her, without her permission. (*See* Pl.Ex. 1 at 110:25–111:7; 113:6–7; 114:16; 116:2–3; 116:8; 116:16–22; 117:9–10; 117:23–24; 118:20–119:17; 122:4–124:1; 124:22–125:24). She further testified that Mr. Jacoby's unwanted touchings were often accompanied by lewd solicitations for sex, and that Mr. Jacoby's conduct made her feel embarrassed, humiliated, fearful, angry, and worried. (*See id.* at 112:9–14; 113:14–19; 115:4–8; 118:3–8; 120: 3–4; 124:8–10; 124:19–21; 126:12–18; 128:16).

Mr. Jacoby contends that this testimony is insufficient to sustain the jury's verdict because it was uncorroborated. (Def's Br. in Supp. 7). However, he conceded at trial that corroboration was not required to prove battery. (Pl.Ex. 2 at 161:17–21). The Court thus concludes that Ms. Hughston's testimony is sufficient to support the jury's verdict. Second, Mr. Jacoby does not argue that the verdict was based on false evidence, and nothing in the Court's review of the evidence suggests that the verdict was based on false evidence.

Lastly, the jury's verdict, if left undisturbed, will not result in a miscarriage of justice. Neither the compensatory damage award or the punitive damage award is excessive in light of the evidence produced

---

**2.** *See* Virginia Code § 8.01–38.1 (providing that "[i]n no event shall the total amount awarded for punitive damages exceed $350,000.").

at trial. The record reflects that the jury's award of damages comports with the Court's instructions regarding compensatory and punitive damages. Further, the single-digit 3.75 ratio between the two awards and falls within the Supreme Court's acceptable range and, therefore, is not strikingly out of proportion. *See State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 425, 123 S.Ct. 1513.

As the record contains ample evidence supporting the jury's verdict, there is no claim that the evidence produced at trial is false, and the jury's award of compensatory and punitive damages is not strikingly out of proportion such that it fails to comport with due process, Mr. Jacoby's Alternative Motion for a New Trial is denied.

## III. CONCLUSION

The Court denies Mr. Jacoby's Motion for Remittitur or, Alternatively, for a New Trial because the jury's compensatory and punitive damages awards are not excessive, the jury's verdict is not against the clear weight of the evidence, and the verdict will not result in a miscarriage of justice. Accordingly, it is hereby

ORDERED that Defendant Philip Jacoby's Motion for Remittitur or, Alternatively, for a New Trial is DENIED.

The Clerk is directed to forward a copy of this Order to Counsel.